**In re Alvin GREEN, Relator.**

No. 06–0496.

Supreme Court of Texas.

April 20, 2007.

Craig A. Jackson, Southlake, Georganna L. Simpson, Law Offices of Georganna L. Simpson, Dallas, for relator.

Jonathan Jay Bates, Pezzulli Kinser, L.L.P., Dallas, for real party in interest.

Sheriff Lupe Valdez, Sheriff of Dallas County, Dallas, pro se.

PER CURIAM.

Alvin Green argues he cannot be imprisoned for nonpayment of a contractual alimony obligation incorporated into his divorce decree. We agree that a court order to pay spousal support is unenforceable by contempt if the order merely restates a private debt rather than a legal duty imposed by Texas law. Because the district court's decree was not "spousal maintenance" ordered under the Family Code but rather was issued solely on the basis of the parties' private alimony contract, we grant Alvin's writ of habeas corpus and order him discharged.

Alvin and Brenda Green divorced in 2004, and the district court's final divorce decree includes this "spousal maintenance" language:

> The Court finds that ALVIN R. GREEN has agreed contractually to pay BRENDA KAY GREEN spousal maintenance, as owelty and to affect [sic] a fair division of the community estate. Accordingly, ALVIN R. GREEN is ordered to pay as spousal maintenance the sum of $1,950.00 per month to BRENDA KAY GREEN....

The decree specifies that the $1,950 payments shall continue from February 2004 until April 1, 2005, and then drop to $1,450 per month until January 19, 2016.

Chapter Eight of the Texas Family Code provides for court-ordered spousal "maintenance" under certain circumstances. Section 8.057(c) allows for modification of maintenance orders upon a showing of "a material and substantial change in circumstances of either party." Several months after the 2004 divorce decree was signed, Alvin sought a reduction in his spousal support obligations on grounds of inability to pay. The same district court that entered the divorce decree, but with a different judge, denied the motion, stating:

> The Court finds that the spousal maintenance requested to be modified is not "spousal maintenance" ordered by the court under Texas Family Code § 8 et seq., but rather that the payments are contractual alimony agreed by the parties to affect [sic] a fair division of the community estate. As such, the Court finds that payments are not subject to modification as plead.

In January 2006, Brenda filed a "Second Motion for Enforcement and First Motion to Revoke Suspension of Commitment," arguing that Alvin had failed to make spousal support payments and to maintain health insurance for their children as required by the divorce decree, and requesting that Alvin be held in contempt and incarcerated.

After a hearing, the district court granted this motion. The court signed an order prepared by Brenda, but crossed out some of the language. The order states that Alvin failed to maintain the children's health insurance as ordered by the divorce decree during certain months, but the court six times crossed out Brenda's proposed language finding Alvin "in contempt of court for this failure to maintain health insurance as ordered." The order goes on to state that Alvin did not pay the required spousal support during several months, and that this failure amounted to contempt of court. In the decretal portion of the order, as modified by the district court, the court adjudged Alvin in contempt for seven instances of failure to make spousal support payments. Again, the court crossed out Brenda's proposed language—for a seventh time—that would have adjudged Alvin in contempt for failure to provide health insurance for the children. The order then contains commitment orders. As punishment for criminal contempt, it commits Alvin to the county jail for 180 days for the seven instances of

failure to pay spousal support. In a section styled "Civil Contempt," the order then states:

> IT IS ORDERED that Respondent, Alvin Green, is committed to and shall be confined in the county jail of Dallas County, Texas, until he complies with the following:
>
> 1. Payment of $32,384.92 to Ms. Brenda K. Green.
>
> 2. Proof of current health insurance coverage for the children.

Alvin was thereupon incarcerated. He sought habeas corpus relief in the court of appeals, which denied relief without opinion. He then sought a writ of habeas corpus in this Court. We granted temporary relief and ordered him released on $3,000 bond pending review of his petition.

■■■ We hold that Alvin cannot be incarcerated for failure to make the contractual spousal payments specified in the divorce decree. The failure to pay a private alimony debt, even one referenced in a court order, is not contempt punishable by imprisonment.

Article I, section 18 of the Texas Constitution states: "No person shall ever be imprisoned for debt." Construing this succinct, eight-word provision—our lengthy Constitution's shortest section—we have held that a failure to pay support promised under a prenuptial agreement is not punishable by contempt. *Ex parte Hall,* 854 S.W.2d 656, 656–57 (Tex.1993). In *Hall,* we recognized that "[t]he obligation which the law imposes on spouses to support one another and on parents to support their children is not considered a 'debt' within Article I, section 18, but a legal duty arising out of the status of the parties." *Id.* at 658. We noted, for example, that an order requiring temporary support payments under the Family Code fell under this duty. *Id.* "However, a person may also contract to support his spouse and children, and that obligation, to the extent it exceeds his legal duty, is a debt." *Id.* We held that an order of support is enforceable by contempt only if it was entered on the authority of the Family Code. *Id.* at 659.

In this case, the spousal payments were payments Alvin voluntarily agreed to make as part of the divorce. As the district court stated in the order quoted above, the payments were contractual and not ordered under the Family Code's provision for spousal maintenance.

Under Chapter Eight of the Family Code, the court in a divorce matter may order spousal maintenance, broadly defined to include "an award in a suit for dissolution of a marriage of periodic payments from the future income of one spouse for the support of the other spouse." TEX. FAM. CODE § 8.001(1). However, a spouse can only be ordered to pay maintenance if (1) the spouse has committed a recent act of family violence, or (2) the marriage lasted at least ten years and the receiving spouse cannot support himself or herself due to disability, is the full-time custodian of a disabled child of the marriage, or "clearly lacks earning ability in the labor market adequate to provide support for the spouse's minimum reasonable needs, as limited by Section 8.054." *Id.* § 8.051. Under section 8.054, unless the receiving spouse is disabled or the custodian of a disabled child, the maintenance cannot exceed three years, and under section 8.056, the obligation terminates if the receiving spouse remarries.

In the pending case, the support Alvin agreed to pay falls outside of Chapter Eight. The payment obligation exceeds three years, and there were no findings that Brenda was herself disabled, was caring for a disabled child, or lacked sufficient earning ability. Nor did the decree state

that payments terminate upon Brenda's remarriage. And as noted above, the district court has held explicitly that the maintenance "is not 'spousal maintenance' ordered by the court under Texas Family Code § 8 et seq., but rather that the payments are contractual alimony agreed by the parties...." Under *Hall,* the support was not entered "on the authority of the Family Code," 854 S.W.2d at 658, and thus cannot be enforced by contempt.

Brenda argues that the district court could hold Alvin in contempt under section 8.059(a) of the Family Code, which provides: "The court may enforce by contempt the court's maintenance order or an agreement for the payment of maintenance voluntarily entered into between the parties and approved by the court." This provision and the remainder of the original version of Chapter Eight became law in 1995, after our decision in *Hall. See* Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 10.02, 1995 Tex. Gen. Laws 3543, 3577–80.

Section 8.059(a) can be read two ways. Brenda's interpretation is that *any* agreement to pay spousal support is enforceable by contempt. The alternative interpretation is that a maintenance obligation, whether contractual or court-imposed, is punishable by contempt *only if it meets Chapter Eight's other requirements.* We reject Brenda's construction for several reasons.

First, such a reading would make "maintenance" under section 8.059(a) inconsistent with the requirements of maintenance elsewhere in Chapter Eight. Maintenance under this chapter must be of limited duration, must terminate on remarriage, and must be to support a spouse with special needs or in special circumstances. Second, reading section 8.059(a) as applying to all contractual alimony agreements would clash head-on with section 9.012(b), which

provides generally that "[t]he court may not enforce by contempt an award in a decree of divorce or annulment of a sum of money payable in a lump sum or in future installment payments in the nature of debt." As one treatise explains:

> The traditional agreement to pay alimony incorporated into a divorce decree falls within the Family Code's ban on enforcement by contempt [citing § 9.012(b) ]. The obligation typically assumed in an alimony agreement is not a legal duty to pay but is, plain and simple, a debt, nonpayment of which cannot result in imprisonment [citing *Hall* and other authorities]. It could be argued that the 1995 enactment of the spousal maintenance statute changes the situation.... A better reasoned approach is to distinguish the traditional alimony promise (to pay money to balance the property division and minimize taxes, without regard to the spouse's ability to be self-supporting) from the legal obligation to support an ex-spouse who is incapable of gainful employment. While a legal obligation of support is enforceable by contempt, the promise to pay contractual alimony creates nothing more than a debt.

3 John D. Montgomery et al., Texas Family Law Practice and Procedure § N3.03[1] (2006).

■ Third, reading section 8.059(a) as requiring imprisonment for breach of a contractual arrangement would surely make that section unconstitutional. We held in *Hall,* and reaffirm today, that one spouse's voluntary agreement to support the other, to the extent it exceeds a legal duty, is a contractual debt that cannot be enforced by contempt. 854 S.W.2d at 658–59; *see also Allen v. Allen,* 717 S.W.2d 311, 313 (Tex.1986) ("A marital property agreement, although incorporated into a final divorce decree, is treated as a con-

tract and its legal force and meaning are governed by the law of contracts, not the law of judgments."). We must of course avoid a construction of a statute that renders it unconstitutional. *See* TEX. GOV'T CODE § 311.021(1). Brenda may certainly attempt to enforce the parties' contract via other legal mechanisms—execution or attachment of real property—but Alvin cannot be jailed unless his obligation arises from a legal duty with a statutory or constitutional basis. There can be no imprisonment absent such authority.

There remains the question of whether Alvin can be incarcerated under the contempt order for failure to provide health insurance for his children. Brenda does not argue that Alvin can be imprisoned for this reason, nor does Alvin argue the contrary. Regardless, as described above, the contempt order purports to keep Alvin in jail for civil contempt until he makes spousal payments *and* provides proof of current health insurance for his children.

A failure to provide child support, including a failure to provide health insurance under a voluntary agreement, is punishable by contempt. *See* TEX. FAM. CODE §§ 154.124(c), 157.002(b)(2), 157.166(b). But Alvin cannot validly be confined absent a proper order of commitment, and this contempt order omits two indispensable things: (1) a written judgment of contempt for neglecting to maintain his children's health insurance, and (2) a written order of commitment for that failure. "It is well established that both a written judgment of contempt and a written order of commitment are required by due process to imprison a person for civil constructive contempt." *Ex parte Hernandez*, 827 S.W.2d 858, 858 (Tex.1992) (per curiam); *accord Ex parte Lee*, 704 S.W.2d 15, 16 (Tex.1986); *Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex.1980). As described above, the order Brenda originally proposed contained such language, but the district court crossed out that portion of the contempt judgment relating to Alvin's failure to provide health insurance and every factual finding that would have supported such a judgment. However, the court-modified and -signed order, while lacking findings and a written judgment of contempt concerning health insurance, *does* contain an order of confinement that says Alvin must remain in jail until he pays past due spousal support and provides "[p]roof of current health insurance coverage for the children." Thus, the commitment order purports to make such insurance coverage a condition of Alvin's release, if not a basis for his confinement (a fine distinction, to be sure). This passing reference is not enough under our governing precedent. At the very least, the district court's multiple strike-outs of insurance-related language makes the order ambiguous as to whether the court intended Alvin's failure to provide health insurance, standing alone, to serve as a sufficient basis for a judgment of contempt and resulting commitment. A contempt order "cannot contain uncertainty or susceptibility of more than one construction or meaning." *Ex parte Glover*, 701 S.W.2d 639, 640 (Tex.1985); *see also Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex.1997) (per curiam) (holding that a contempt order must clearly state in what respect the court's earlier order has been violated and "must clearly specify the punishment imposed by the court").

Accordingly, we grant the writ of habeas corpus and order the relator discharged.