COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-270-CV

 

 

GARY DEAN BROOKS                                                          APPELLANT

 

                                                   V.

 

DANA LEDON BROOKS                                                           APPELLEE

 

                                              ------------

 

              FROM
THE 271ST DISTRICT COURT OF WISE COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Introduction








In this appeal, we determine
whether a party to a mediated settlement agreement meeting the requirements of
family code section 6.602 is estopped from enforcing the agreement after he has
agreed to set it aside and go to trial.  Tex. Fam. Code Ann. ' 6.602 (Vernon 2006).  In two
issues, appellant Gary Dean Brooks contends that the trial court erred by
failing to render judgment in accordance with the mediated settlement agreement
and by awarding appellee Dana Ledon Brooks spousal maintenance under family
code section 8.053(b).  Id. ' 8.053(b).  We affirm.

Background Facts

Appellant Gary Dean Brooks
and appellee Dana Ledon Brooks were married for over thirty years.  On March 6, 2003, Dana filed for divorce;
Gary answered and counterpetitioned for divorce on March 12, 2003.  On May 20, 2004, Dana and Gary entered into a
mediated settlement agreement (MSA) dividing their property[1]
in accordance with section 6.602 of the Texas Family Code.  The MSA was filed in the court record.  Both parties and their attorneys signed the
agreement.  

Over a year later, on
November 15, 2005, Dana=s and Gary=s attorneys, but not Dana and Gary, signed a letter, which they also
filed in the court record, stating, APursuant to our conversation today it is agreed that the mediated
settlement agreement dated May 20, 2004 is void and this matter will be
mediated again at a time mutually agreed upon by the parties and attorneys.@  The parties subsequently tried
the case on December 18, 2006, over a year later.  








At trial, both Gary and Dana
presented proposed property divisions to the court for consideration, which
were both admitted into evidence.  They
also stipulated that Gary=s retirement
benefits were separated into two tiers, that Tier 1 was an annuity that was not
divisible, and that Gary would not interfere with any award of the divisible
part (Tier 2) to Dana.

Dana testified first, asking
the court (1) to sell a tract of real property on Eagle Mountain Lake that the
couple owned and to give each of them one-half of the proceeds, (2) to award
her one-half of the equity and mineral interest in the parties= residence, and (3) to divide Gary=s Tier 2 retirement benefits equally because the parties had been
married for all but one of the thirty-four years Gary has worked for Burlington
Northern.[2]  Dana also testified that at the time of trial
she was fifty-two, was primarily a stay at home mother while the parties were
married, and that she had worked for only about seven years during the
marriage:  as a receptionist, doctor=s assistant, an auctioneer, and at a convenience store.  Dana had only a high school diploma.  Dana also testified that she had osteoporosis
and disc problems with her back; she cannot work because the osteoporosis is so
severe that she is at risk of breaking bones. 








Gary testified next on his
own behalf.  When asked whether he
understood that a portion of his Tier 2 retirement benefit could be given to
Dana, Gary answered, AYes, I do.@  Gary never asked the judge not
to award any retirement to Dana but merely asked him to take into consideration
that she had lived away from him for nine years of the marriage.[3]  He also asked the judge to award him the
residence, including the debt on it, and all of the mineral interest associated
with it.  He wanted the Eagle Mountain
Lake property to be awarded to Dana.

On February 16, 2007, before
the decree was signed, Gary filed a motion for substitution of counsel, which
the trial court granted.  Gary=s new counsel filed a motion for new trial, in which he contended that
A[t]he mediated settlement agreement should have been the basis of the
[trial] Court=s ruling in
this case,@ and that Athere was no evidence or insufficient evidence for the [trial] Court
to order maintenance to be paid . . . to Dana.@  The trial court heard and
denied the motion on July 2, 2007.  On
July 10, 2007, the trial court signed a final decree.  Gary timely filed a notice of appeal.








Did Trial Court Have Duty to Render Judgment on MSA?

In his first
issue, Gary contends that the trial court erred by failing to render judgment
in accordance with the parties= agreement in the MSA.

Applicable Law

Texas has a public policy of
encouraging the peaceful resolution of disputes, particularly those involving
the parent‑child relationship, and the early settlement of pending
litigation through voluntary settlement procedures.  Tex. Civ. Prac. & Rem.
Code Ann. ' 154.002
(Vernon 2005); Boyd v. Boyd, 67 S.W.3d 398, 402 (Tex. App.CFort Worth 2002, no pet.). 
Trial and appellate courts are charged with the responsibility of
carrying out this public policy.  Tex. Civ. Prac. & Rem. Code Ann. ' 152.003 (Vernon 2005); Boyd, 67 S.W.3d at 402; Adams v.
Petrade Int=l, Inc., 754 S.W.2d 696, 715 (Tex. App.CHouston [1st Dist.] 1988, writ denied) (op. on reh=g).  The Texas Family Code also
furthers this policy by providing that a mediated settlement agreement is
binding on the parties if the agreement

(1) provides, in a prominently displayed
statement that is in boldfaced type or capital letters or underlined, that the
agreement is not subject to revocation;

 

(2) is signed by each party to the
agreement;  and

 

(3) is signed by the party=s
attorney, if any, who is present at the time the agreement is signed.  

 








Tex. Fam. Code Ann. '' 6.602(b),
153.0071(d) (Vernon 2002 & Supp. 2007). 
Mediated settlement agreements are binding in suits affecting the parent‑child
relationship, as well as suits involving only marital property.  Id. '' 6.602(b)B(c),
153.0071(d)B(e); Boyd,
67 S.W.3d at 402; Spinks v. Spinks, 939 S.W.2d 229, 230 (Tex. App.CHouston [1st Dist.] 1997, no writ). 
Here, because there are no conservatorship and possession issues to be
determined, only section 6.602 is applicable. 
See Boyd, 67 S.W.3d at 402.








Ordinarily, settlement
agreements arising from mediation are not binding when one party timely
withdraws consent to the agreement, unless the other party successfully sues to
enforce the settlement agreement as a contract that complies with rule 11 of
the Texas Rules of Civil Procedure.  See
Tex. Civ. Prac. & Rem. Code Ann.
' 154.071(a) (Vernon 2005); Padilla v. LaFrance, 907 S.W.2d 454,
461B62 (Tex. 1995); Boyd, 67 S.W.3d at 402.  Unilateral withdrawal of consent does not,
however, negate the enforceability of a mediated settlement agreement meeting
the requirements of 6.602(b), and a separate suit for enforcement of a contract
is not necessary.  Boyd, 67 S.W.3d
at 402; Alvarez v. Reiser, 958 S.W.2d 232, 234 (Tex. App.CEastland 1997, writ denied). 
Rather, section 6.602 creates a procedural shortcut for the enforcement
of mediated settlement agreements in divorce cases.  Boyd, 67 S.W.3d at 402; Cayan v. Cayan,
38 S.W.3d 161, 166 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).   Thus, a mediated settlement agreement that
meets the requirements of section 6.602(b) is binding, and a party is entitled
to judgment on the agreement notwithstanding rule 11 or another rule of law. Tex. Fam. Code Ann. ' 6.602(b)B(c); Boyd,
67 S.W.3d at 402.

The phrase Anotwithstanding rule 11 or another rule of law@ does not, however, require a trial court to enforce a mediated
settlement agreement simply because it complies with section 6.602(b),
irrespective of what the agreement provides for or how it was procured.  Boyd, 67 S.W.3d at 403.  For example, a trial court may properly
refuse to enforce a mediated settlement agreement that otherwise complies with
section 6.602(b) if a party procures the agreement by intentionally failing to
disclose material information.  See id.
at 404B05.

Applicable Facts

The parties did not rely on
the MSA at the final divorce trial on December 18, 2006.  In fact, it was not discussed nor was it
admitted into evidence.








At the motion for new trial,
Gary testified that he signed the MSA on May 20, 2004, that he did not know
whether trial had proceeded on the MSA but he thought it did, and that he had
seen a one-page letter purporting to be the trial judge=s ruling in the case and it did not follow the MSA.[4]  He then asked the trial court to set aside
its letter ruling and enter a judgment based on the MSA.  However, Gary also testified that some of the
real property[5]
had already been divided and that Dana was paid $20,500 as a result. 

On cross-examination, Gary
admitted that at the mediation where the MSA was signed, he told the attorneys,
based on information he received at two railroad retirement seminars, that his
Tier 2 benefits were not divisible in a divorce.  When asked whether he had agreed to
remediate, the following colloquy occurred:

[Gary]:                       .
. . I=ve
told y=all
from the first I was willing to talk about anything. 

 

. . .
.

 

[Dana=s
counsel]: So you agreed?  You went back to the second mediation; is
that correct?  You went back and we
mediated this case again; is that correct?

 

[Gary]:                       AYes,
ma=am,
that is correct.@ 

 

. . .
.

 








[Dana=s
counsel]:         So you did agree to go back to mediation to try to settle this
case; is that correct?

 

[Gary]:                       Yes,
ma=am,
that is correct.

 

[Dana=s
counsel]:         So you knew that this case was going to be not based on the
prior Mediated Settlement Agreement?

 

[Gary]:                       No,
ma=am, I
didn=t
know that.

 

. . .
.

 

[Dana=s
counsel]:         Then why did you agree to go back to mediation to settle it?

 

[Gary]:                       Ma=am, I
don=t
want - - I didn=t
want it to go to trial.  I didn=t
want a bunch of accusations and everything brought out.  I didn=t want - - I wanted us - - I
wanted us to just go our separate ways.

 

[Dana=s
counsel]:         Okay.  But you knew that
that wasn=t
going to happen until we had an agreement on the case, isn=t
that correct, so that=s why
you mediated again?  Didn=t you
know that - - your attorney told you we had to remediate this case, didn=t he?

 

[Gary]:                       He
said that y=all
wanted to remediate.  I said, AWe=ll
talk.  Let=s go.@

 

[Dana=s
counsel]:         And you said okay?

 

[Gary]:                       Yes,
ma=am,
that=s
correct.

 

[Dana=s counsel]:         Okay.  And then when we didn=t
settle it there, your attorney told you we had to have a trial, didn=t he?








[Gary]:                       Yes,
ma=am.

 

[Dana=s
counsel]:         And you came to trial, didn=t you?

 

[Gary]:                       Yes,
ma=am.

 

Analysis

 

Gary contends that neither
the trial judge nor the attorneys were entitled to set aside the MSA because
there is no evidence that he intentionally or fraudulently withheld information
about the divisibility of his Tier 2 retirement benefits; he contends that an
MSA is irrevocable regardless of the parties= mistaken beliefs as to the facts underlying the agreement.  See Cayan, 38 S.W.3d at 166.  However, we need not decide whether an
otherwise irrevocable MSA under family code section 6.602 may be voided on
mutual mistake grounds because we hold that, regardless of the enforceability
of the MSA, Gary is estopped from seeking judgment in accordance with the terms
of the MSA.








Quasi‑estoppel
precludes a party from asserting, to another=s disadvantage, a right inconsistent with a position previously
taken.  Lopez v. Munoz, Hockema &
Reed, L.L.P., 22 S.W.3d 857, 864 (Tex. 2000); Atkinson Gas Co. v.
Albrecht, 878 S.W.2d 236, 240 (Tex. App.CCorpus Christi 1994, writ denied). 
The doctrine applies when it would be unconscionable to allow a person
to maintain a position inconsistent with one to which he acquiesced, or from
which he accepted a benefit.  Lopez,
22 S.W.3d at 864; Atkinson Gas Co., 878 S.W.2d at 240; Vessels v.
Anschutz Corp., 823 S.W.2d 762, 765B66 (Tex. App.CTexarkana
1992, writ denied).  Thus, quasi-estoppel
forbids a party from accepting the benefits of a transaction or statute and
then subsequently taking an inconsistent position to avoid corresponding
obligations or effects.  Atkinson Gas
Co., 878 S.W.2d at 240; Mexico=s Indus., Inc. v. Banco Mex. Somex, S.N.C., 858 S.W.2d 577, 581 n.7 (Tex. App.CEl Paso 1993, writ denied); Turcotte v. Trevino, 499 S.W.2d
705, 712B13 (Tex. Civ. App.CCorpus Christi 1973, writ ref=d n.r.e.).  Moreover, unlike
equitable estoppel, quasi-estoppel requires no showing of misrepresentation or
detrimental reliance.  Atkinson Gas Co.,
878 S.W.2d at 240; Vessels, 823 S.W.2d at 765.








Here, Gary=s position at trial was clearly inconsistent with his later position
in his motion for new trial that the MSA was enforceable and that judgment
should have been rendered in accordance with the MSA.  Gary admitted that he agreed to remediate and
that he knew he would have to go to trial if the second mediation failed.  At trial, Gary presented his own proposed property
division as evidence, which differed from the property division in the
MSA.  And Gary never objected at trial on
the basis that Dana=s proposed
property division differed from the property division in the MSA.  See Tex.
R. App. P. 33.1(a)(1) (requiring that objection in trial court be
timely); Tex. R. Evid. 103; Bushell
v. Dean, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh=g); Hoxie Implement Co. v. Baker, 65 S.W.3d 140, 145 (Tex. App.CAmarillo 2001, pet. denied) (holding that objection is considered
timely if asserted when the potential error becomes apparent).  In addition, according to Gary=s own testimony, by the time the motion for new trial was heard, the
Eagle Mountain Lake property had already been sold, and the parties had divided
the proceeds equally.[6]  








Moreover, a trial court
judgment in accordance with the MSA would be to Dana=s disadvantage because she would lose her equity in the parties= residenceCwhich is
greater than Gary=s share of
the equity in the Eagle Mountain Lake propertyCas well as her court-ordered spousal support.  Additionally, the MSA is unclear on the
division of Gary=s retirement
benefits, stating that Gary is entitled to A[a]ll of his portion of the railroad retirement@ and that Dana is entitled to the A[s]pousal portion of railroad retirement benefits as provided by law.@  In contrast, the divorce
decree awards Dana one-half of the Tier 2 benefits.  For these reasons, we conclude and hold that
it would be unconscionable to allow Gary to enforce the MSA after taking the
clearly inconsistent position that it is unenforceable by participating in a
second mediation and in trial and proposing his own property division at trial
that differs from the terms of the MSA.[7]  We overrule Gary=s first issue.

Did Trial Court Properly Award Spousal Maintenance to Dana?

In his
second issue, Gary claims that the trial court erred in awarding Dana spousal
maintenance based on her testimony that she suffered an incapacitating physical
disability.  According to Gary, Dana=s testimony aloneCwithout any supporting medical recordsCis insufficient to support the trial court=s finding that she has an incapacitating physical disability.

Applicable Law and Standard of Review








When a marriage has lasted
ten years or more, a spouse in a divorce proceeding is eligible to seek spousal
maintenance if that spouse lacks sufficient property to meet minimum reasonable
needs and cannot support herself due to an incapacitating physical or mental
disability.  See Tex. Fam. Code Ann. ' 8.051(2)(a) (Vernon 2006); In re Green, 221 S.W.3d 645, 647
(Tex. 2007);  Hackenjos v. Hackenjos,
204 S.W.3d 906, 908B09 (Tex.
App.CDallas 2006, no pet.).

Section 8.054(a)(1) of the
Texas Family Code generally limits a trial court=s award of spousal maintenance to no more than three years.  See Tex.
Fam. Code Ann. '
8.054(a)(1); In re Green, 221 S.W.3d at 647; Hackenjos, 204
S.W.3d at 909; Crane v. Crane, 188 S.W.3d 276, 279 (Tex. App.CFort Worth 2006, pet. denied). 
But under section 8.054(b), if the spouse seeking maintenance is unable
to support herself through appropriate employment because of an incapacitating
physical or mental disability, the trial court may order spousal maintenance
for an indefinite period of time as long as the disability continues.  Tex.
Fam. Code Ann. ' 8.054(b); In
re Green, 221 S.W.3d at 647; Hackenjos, 204 S.W.3d at 909; Crane,
188 S.W.3d at 279.  Additionally, section
8.056 provides that the obligation to pay future maintenance terminates on the
death of either party, the remarriage of the obligee, or if, after a hearing,
the trial court determines that the obligee Acohabits with another person in a permanent place of abode on a
continuing, conjugal basis.@  Tex. Fam. Code Ann. ' 8.056; In re Green, 221 S.W.3d at 647; Hackenjos, 204
S.W.3d at 909.








A trial court=s award of spousal maintenance is subject to an abuse of discretion
review.  Chafino v. Chafino, 228
S.W.3d 467, 474 (Tex. App.CEl Paso 2007, no pet.); Pickens v. Pickens, 62 S.W.3d 212, 214
(Tex. App.CDallas 2001,
pet. denied).  The trial court may
exercise its discretion to award spousal maintenance if the party seeking
maintenance meets specific eligibility requirements.  Crane, 188 S.W.3d at 278; Pickens,
62 S.W.3d at 214B15.  Under the abuse of discretion standard, legal
and factual sufficiency of the evidence are not independent grounds for
asserting error, but they are relevant factors in assessing whether the trial
court abused its discretion.  Dunn v.
Dunn, 177 S.W.3d 393, 396 (Tex. App.CHouston [1st Dist.] 2005, pet.denied); Pickens, 62 S.W.3d at
214.

Applicable
Facts








Here, the
trial court awarded indefinite maintenance under section 8.054(b), subject only
to the statutory limitations set forth in section 8.056.  Dana did not introduce any medical records
into evidence, nor did she offer any expert testimony at trial.  However, she did testify that her health
started deteriorating about three years before trial and that she had three
discs on her back Athat were
out.@  She began taking epidural
steroid injections, which she takes every six months for about six weeks.  The injections affect her ability to
work.  In addition, while she was being
treated for her back, she had a bone density test that revealed
osteoporosis.  According to Dana, the
osteoporosis prevents her from working because her bones are Aso brittle that . . . if [she] step[s] wrong, [she] can break [her]
back . . . leg . . . [or] foot.@  She has trouble with the
medications used to treat osteoporosis. 
In addition, the doctors had discovered a mass on her right hip, and she
was awaiting the MRI results.  Dana
testified that her parents had supported her for the past six years before
trial, while she was living apart from Gary, and that her only job during that
time was assisting an elderly woman with running errands and going to the doctor.


Analysis

Gary
contends that there is insufficient medical evidence to support the trial court=s finding that Dana suffers from an incapacitating physical
disability.  In Pickens v. Pickens,
the Dallas Court of Appeals held that

testimony on incapacity need
not be limited to experts; a fact finder may reasonably infer incapacity from
circumstantial evidence or the competent testimony of lay witnesses.  The question of the extent and duration of
incapacity is an issue that can be answered by lay opinion and does not require
medical testimony.  In fact, the
testimony of the injured party will support a finding of incapacity even if
directly contradicted by expert medical testimony.

62 S.W.3d at 215B16 (citations omitted).  Gary
acknowledges this holding in Pickens but contends that the case is
distinguishable because there was medical evidence in that case supporting the
trial court=s
ruling.  We disagree.








In Lopez v. Lopez, the
Corpus Christi Court of Appeals held that the trial court did not abuse its
discretion in awarding spousal support for an incapacitating disabilityCdiabetesCbased on the
testimony of the wife even though the husband testified that he did not think
his wife=s diabetes was incapacitating. 
55 S.W.3d 194, 199 (Tex. App.CCorpus Christi 2001, no pet.). 
And in Smith v. Smith, the same court, relying on Pickens,
held that the trial court did not abuse its discretion in awarding spousal
maintenance based on the husband=s testimony that an aneurysm had left him incapacitated, despite the
wife=s testimony that she did not think the disability was
incapacitating.  115 S.W.3d 303, 308B09 (Tex. App.CCorpus
Christi 2003, no pet.).  We agree with
the holding and reasoning of these courts. 
Accordingly, we conclude and hold that there is sufficient evidence to
support the trial court=s conclusion
that Dana=s disability
is incapacitating and, thus, that the trial court did not abuse its discretion
in awarding her monthly spousal maintenance. 
We overrule Gary=s second
issue.

Conclusion

Having overruled Gary=s two issues, we affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON,
HOLMAN, and GARDNER, JJ.

DELIVERED: 
June 5, 2008











[1]Although
the couple had three children, none of them were minors at the time of the
divorce.  





[2]This
testimony is consistent with Dana=s proposed property division,
except that she asks for both properties to be sold and the proceeds to be
divided equally between them.  





[3]In
his proposed property division, under AProperty to Wife,@ Gary
listed ASpousal
portion of railroad retirement benefits.@  





[4]This
letter is not included in the clerk=s record.





[5]The
proposed property distributions refer to the property on Eagle Mountain Lake;
Gary referred to the property at the motion for new trial hearing as the
Saginaw property. 





[6]Although
Gary states in his brief that he obviously wanted to enforce the MSA, the only
evidence in the record is that he did not want to enforce it until the trial
court indicated that it would enter a decree that was not as advantageous to
him.  





[7]After
hearing the motion for new trial, the trial court concluded, AI=ll
deny the Motion for New Trial both because, number one, . . . we went to trial
with two attorneys, same attorneys representing them when mediated and
signed. . . .  And with
the approval of the parties, we all went to trial on it [the divorce] with
both parties and the same attorneys.@  [Emphasis added.]