

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00353-CV

———————————————————

MIGUEL MARTINEZ, Appellant

V.

LILIA MARTINEZ, Appellee

On Appeal from the 325th District Court
Tarrant County, Texas
Trial Court No. 325-640054-18

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant Miguel Martinez (Husband) appeals from a divorce decree dissolving his marriage to appellee Lilia Martinez (Wife). In two issues, Husband argues that the trial court abused its discretion by awarding Wife spousal maintenance and by dividing the marital estate in an inequitable manner. We will affirm.

## I. Background

Husband and Wife were married in 1987 and separated in August 2017. In May 2018, Husband sued for divorce and Wife countersued. As Husband and Wife have no minor children, the divorce proceedings focused on the division of property and Wife's request for spousal maintenance.

Husband is a warehouse worker, and Wife is a retail salesperson. At the time of divorce, Husband earned $20 per hour, and Wife earned $15 per hour. Each spouse lived in a separate home, and neither had a mortgage. Other significant assets included real property in Mexico, Husband's and Wife's retirement accounts, several bank accounts, motor vehicles, and other miscellaneous personal property.

At trial, the most significant property division dispute concerned the real property in Mexico. Wife asserted that she had purchased the property from her grandfather before she married Husband and presented evidence, including her aunt's testimony, to support this claim.[1] However, Husband claimed that the property had

---

[1]In addition to testimony from Wife and her aunt, Wife presented a survey that was dated prior to the parties' marriage and indicated that it had been done for Wife,

been purchased after marriage and was therefore part of the community estate. The parties also disagreed regarding the property's value: Wife estimated the value to be approximately $13,000, while Husband contended that it was worth $120,000.[2]

In support of her request for spousal maintenance, Wife presented evidence concerning her income and expenses as well as her physical disability. Wife testified that as of the time of trial, she could not pay all of her bills without spousal support[3] and that her expenses would increase after the divorce was finalized because Husband was currently paying for her homeowner's, car, and health insurance. In addition, Wife and her physician's assistant Melissa Encinas testified that Wife suffers from fibromyalgia and multiple sclerosis, that these conditions could affect Wife's ability to work, and that the symptoms caused by these conditions would likely worsen over time.

---

who was identified by her maiden name, and a property tax statement reflecting that the property had been acquired several months before the marriage.

[2]The trial court's findings of fact and conclusions of law reflect that "there was no appraisal." However, the trial court admitted into evidence Wife's appraisal from the Mexican government reflecting the value to be 260,572 Mexican pesos, which equates to approximately $13,400.

[3]Husband had been ordered to pay temporary spousal support of $450 per month during the pendency of the divorce proceedings.

After a three-day trial,[4] the trial court entered a final divorce decree in August 2021. The decree, among other things, awarded Wife 100 percent of the Mexico property and required Husband to pay Wife spousal maintenance of $450 per month for 60 months.[5]

Husband timely requested findings of fact and conclusions of law and filed a motion for new trial. In October 2021, the trial court issued its findings of fact and conclusions of law and heard Husband's motion for new trial, which the court denied on November 1, 2021. This appeal ensued.

## II. Discussion

### A. Spousal Maintenance

In his first issue, Husband argues that the trial court abused its discretion by awarding Wife spousal maintenance. Specifically, Husband argues that the evidence is insufficient to show (1) that Wife has a disability that prevents her from providing for her minimum reasonable needs and (2) that Wife lacks sufficient property upon divorce to provide for her minimum reasonable needs.

---

[4]The trial was conducted on October 1, 2020, November 5, 2020, and January 28, 2021.

[5]The decree provides that the payments will continue "until the earliest of one of the following events occurs": (1) April 1, 2026; (2) Husband's or Wife's death; (3) Wife's remarriage; or (4) "further orders of the [c]ourt affecting the spousal maintenance obligation, including a finding of cohabitation by Wife." *See generally* Tex. Fam. Code Ann. § 8.056.

A spouse in a divorce proceeding is eligible to seek spousal maintenance if that spouse lacks sufficient property to meet minimum reasonable needs and cannot support herself due to an incapacitating physical or mental disability. *See* Tex. Fam. Code Ann. § 8.051(2)(A); *In re Green*, 221 S.W.3d 645, 647 (Tex. 2007) (per curiam) (orig. proceeding); *In re Marriage of Elabd*, 589 S.W.3d 280, 283 (Tex. App.—Waco 2019, no pet.). The term "minimum reasonable needs" is not defined in the Family Code, nor are there cases defining the term. *Slicker v. Slicker*, 464 S.W.3d 850, 860 (Tex. App.—Dallas 2015, no pet.). Rather, the minimum reasonable needs for a particular individual is a fact-specific determination that should be made by the trial court on a case-by-case basis. *Id.*

Section 8.054(a)(1) of the Texas Family Code generally limits a trial court's award of spousal maintenance based on the length of the marriage. *See* Tex. Fam. Code. Ann. § 8.054(a)(1); *Green*, 221 S.W.3d at 647; *Elabd*, 589 S.W.3d at 283. But under Section 8.054(b), if the spouse seeking maintenance is unable to support herself through appropriate employment because of an incapacitating physical or mental disability, the trial court may order spousal maintenance for an indefinite period of time as long as the disability continues. Tex. Fam. Code Ann. § 8.054(b); *Green*, 221 S.W.3d at 647; *Elabd*, 589 S.W.3d at 283. Additionally, Section 8.056 provides that the obligation to pay future maintenance terminates on the death of either party; the remarriage of the obligee; or if, after a hearing, the trial court determines that the obligee "cohabits with another person with whom the obligee has a dating or

5

romantic relationship in a permanent place of abode on a continuing basis." Tex. Fam. Code Ann. § 8.056; *Green*, 221 S.W.3d at 647; *Elabd*, 589 S.W.3d at 283.

We review a trial court's award of spousal maintenance for an abuse of discretion. *Smith v. Smith*, No. 02-20-00370-CV, 2022 WL 1682427, at *2 (Tex. App.—Fort Worth May 26, 2022, no pet.) (mem. op.); *Elabd*, 589 S.W.3d at 283–84. A trial court abuses its discretion if it acts without reference to any guiding rules or principles—in other words, if it acts arbitrarily or unreasonably. *Boyd v. Boyd*, 131 S.W.3d 605, 610 (Tex. App.—Fort Worth 2004, no pet.). Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *Elabd*, 589 S.W.3d at 283; *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision or if reasonable minds could differ as to the result. *Smith v. Smith*, 115 S.W.3d 303, 305 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) (first citing *Lopez v. Lopez*, 55 S.W.3d 194, 198 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.); and then citing *In re Bertram*, 981 S.W.2d 820, 826–27 (Tex. App.—Texarkana 1998, no pet.)).

### 1.    Evidence of Disability

In support of its award of spousal maintenance, the trial court made the following findings:

> [Wife] is unable to earn sufficient income to provide for her minimum reasonable needs because of an ongoing incapacitating physical disability or mental disability.

> [Wife]'s ability to provide for her minimum reasonable needs is substantially diminished because of a physical disability, namely multiple sclerosis, fibromyalgia leaving her in chronic pain, fatigued, with visual disturbance and . . . depression. [Wife]'s disability would get progressively worse and affect her ability to work.

Though he does not explicitly reference the above findings in his brief, Husband argues that there is insufficient evidence to support the award of spousal maintenance because Wife failed to show that she suffered from an incapacitating disability that prevented her from continuing to work as she always has. We disagree.

There is no authority directly addressing the quantum of evidence that is required to prove disability in an action for spousal maintenance. *Kelly v. Kelly*, 634 S.W.3d 335, 367 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (first citing *Roberts v. Roberts*, 531 S.W.3d 224, 228–29 (Tex. App.—San Antonio 2017, pet. denied); then citing *Smith*, 115 S.W.3d at 309; and then citing *Pickens v. Pickens*, 62 S.W.3d 212, 215 (Tex. App.—Dallas 2001, pet. denied)). "As the factfinder, the trial court may reasonably infer an individual's incapacity from circumstantial evidence or the competent testimony of a lay witness." *Id.* (first citing *Roberts*, 531 S.W.3d at 228; then citing *Smith*, 115 S.W.3d at 309; and then citing *Pickens*, 62 S.W.3d at 215). However, the evidence must be probative to establish (1) that a disability exists and (2) that this disability prevents the party seeking support payments from providing for his or her minimum reasonable needs. *Roberts*, 531 S.W.3d at 230 (first citing *Pickens*, 62 S.W.3d

7

at 216; then citing *Galindo v. Galindo*, 04-13-00325-CV, 2014 WL 1390474, at \*2 (Tex. App.—San Antonio Apr. 9, 2014, no pet.) (mem. op.); and then citing *Smith*, 115 S.W.3d at 309). "The party seeking maintenance must present probative evidence 'that rises above a mere assertion that unsubstantiated symptoms collectively amount to an incapacitating disability.'" *Kelly*, 634 S.W.3d at 367 (quoting *Roberts*, 531 S.W.3d at 230).

The trial court heard testimony from Wife, Wife's physician's assistant Encinas, and Husband that supported the court's findings concerning Wife's disability. Wife and Encinas both testified that Wife suffers from fibromyalgia and multiple sclerosis and detailed Wife's symptoms, which include chronic headaches and other pain, fatigue, difficulty concentrating, dizziness, depression, and visual disturbances. At trial, Husband acknowledged that Wife had suffered from these symptoms prior to their separation.

Further, there is evidence in the record to support the trial court's finding that Wife's medical conditions affect her ability to work—and thus to provide for her needs. Wife testified that her medical conditions make it difficult to perform her job and that while she always tries to finish her shifts, she sometimes needs to leave early. Because Wife is paid hourly, her income is negatively impacted if she is unable to finish out a shift. Moreover, Encinas explained that because multiple sclerosis is often progressive, it is likely that Wife's symptoms will get worse over time and will increasingly impact her ability to work.

We conclude that Wife presented substantive and probative evidence to support the trial court's findings that Wife has a disability that prevents her from earning sufficient income to provide for her minimum reasonable needs.[6] *See Smith*, 115 S.W.3d at 305. Wife's evidence is probative and sufficient to establish that she has a disability, that this disability affects her ability to work, and that it will likely impact her work even more in the future. *See id.* at 309; *Pickens*, 62 S.W.3d at 216. Accordingly, we hold that the trial court did not abuse its discretion by concluding that Wife "is unable to earn sufficient income to provide for [her] reasonable needs because of an incapacitating physical disability." *See* Tex. Fam. Code Ann. § 8.051(2)(A).

---

[6]Husband cites *Chafino v. Chafino*, 228 S.W.3d 467 (Tex. App.—El Paso 2007, no pet.), and *Roberts*, 531 S.W.3d at 230, to support his contention that the trial court erred in determining that Wife has a disability that prevents her from providing for her minimum reasonable needs. However, both of these cases are distinguishable. In *Chafino*, the spouse sought support under then-Family Code Section 8.051(2)(C) and therefore—unlike Wife who sought support under Section 8.051(2)(A)—had to overcome a statutory presumption that maintenance was not warranted. 228 S.W.3d at 475 (citing Tex. Fam. Code Ann. § 8.053(a)). Further, because the spouse in *Chafino* did not seek support under Section 8.051(2)(A), her evidence of disability was relevant only to show that "she 'clearly' lacks earning ability in the labor market . . . to provide support for [her] reasonable needs." *Id.* Thus, the court in *Chafino* was not tasked with determining whether the spouse seeking support had a "disability" as that term is used in Section 8.051(2)(A). Moreover, unlike the spouse in *Roberts*, Wife did not merely testify "to a variety of ambiguous and vague symptoms and ailments" but rather provided evidence of "a diagnosis, symptoms, [and] treatment of . . . recognized condition[s]"—multiple sclerosis and fibromyalgia—which is the very type of evidence that the *Roberts* court recognized had been held sufficient to support a finding of disability. 531 S.W.3d at 230.

## 2.    Minimum Reasonable Needs

Husband also challenges the trial court's findings that Wife "lacks sufficient income to provide for her minimal needs" and "will lack sufficient property on dissolution of the marriage to provide for her minimum reasonable needs." According to Husband, the evidence is insufficient to show the amount of Wife's minimum reasonable needs, much less that Wife could not meet these needs with her income and the property awarded to her in the divorce decree.  Again, we disagree.

Wife testified regarding her income and expenses.  She expressed that she was unable to pay all of her bills without Husband's monthly $450 spousal support payments.[7]  Her reliance on the support payments was corroborated by her income and expense statement, which reflected monthly income of $2,107.73 and monthly expenses of $2,831.18.[8]  Further, Wife testified that her monthly expenses would

---

[7]As previously noted, Husband had been ordered to pay temporary spousal support of $450 per month during the pendency of the divorce proceedings.

[8]Husband challenges the accuracy of Wife's income and expense statement and asserts that it includes "double-dipped" expenses for doctor's visits, prescription medication, and vitamins.  However, this issue was raised at trial, and the trial court—in view of its findings of fact—found Wife's income and expense statement to be credible.  Because "[t]he trial court, as the finder of fact in a bench trial, is in the best position to determine the candor, demeanor, and credibility of the witnesses," we defer to its credibility determinations and resolutions of conflicting evidence. *In re Marriage of Hunter*, No. 10-21-00281-CV, 2022 WL 7210493, at *2 (Tex. App.—Waco Oct. 12, 2022, no pet.) (mem. op.); *see also In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("We remain mindful that the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the

increase by several hundred dollars after the divorce was finalized because she would have to cover the costs of her homeowner's, car, and health insurance that Husband had been ordered to pay during the pendency of the divorce proceedings.[9]  Thus, there is probative evidence to support the trial court's finding that Wife lacks sufficient income to provide for her minimum reasonable needs.  *See Smith*, 115 S.W.3d at 305.

Pointing to the fact that Wife was awarded a paid-for home, a working motor vehicle, approximately $15,000 in cash accounts,[10] $68,000 in retirement assets,[11] and

---

record on appeal." (quoting *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.))).

[9]In addition to her testimony, Wife offered into evidence an insurance quote from Allstate.  According to the quote, Wife's monthly premiums would be approximately $89 for car insurance and $69 for homeowner's insurance.  The insurance quote also reflected estimated monthly premiums of $43–$64 for a 10-year term life insurance policy with $250,000 in coverage.

[10]Husband approximates the value of the cash accounts at $20,000; however, as Wife points out in her brief, Husband's estimate is based on erroneous valuations of several of the accounts and his failure to recognize that one of the accounts awarded to Wife is actually held for the benefit of Wife's mother.  Using the account values reflected in the trial court's findings of fact and conclusions of law—which, for the most part, are based on the parties' stipulations—and excluding the value of the account held for the benefit of Wife's mother, the value of the cash accounts awarded to Wife totals approximately $15,097.

[11]Husband estimates the value of these retirement assets at $92,744.  However, as Wife points out in her brief, this value incorrectly assumes that Wife was awarded 50 percent of the entire $153,013 value of Husband's 401(k).  Husband's counsel represented to the trial court that approximately $50,000 of these retirement funds were earned prior to marriage and therefore constituted Husband's separate property.  The final divorce decree took this into account and included language awarding Wife

11

the Mexico property valued at $66,500,[12] Husband contends that Wife does not lack sufficient property to provide for her minimum reasonable needs and that the trial court erred by finding otherwise. However, "[w]hen considering the assets awarded in a divorce, the law does not require the spouse to spend down long-term assets, liquidate all available assets, or incur new debt simply to . . . meet short-term needs." *Schafman v. Schafman*, No. 01-20-00231-CV, 2022 WL 962466, at *6 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022, no pet.) (mem. op.) (first citing *Benoit v. Benoit*, No. 01-15-00023-CV, 2015 WL 9311401, at *11 (Tex. App.—Houston [1st Dist.] Dec. 22, 2015, no pet.) (mem. op.); then citing *Everitt v. Everitt*, No. 01-11-00031-CV, 2012 WL 3776343, at *8 (Tex. App.—Houston [1st Dist.] Aug. 31, 2012, no pet.) (mem. op.); and then citing *Dunaway v. Dunaway*, No. 14-06-01042-CV, 2007 WL 3342020, at *3 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet.) (mem. op.)). Courts have upheld maintenance awards "in situations where the spouse receiving the maintenance obtained substantial property in the divorce proceeding when those capital assets provided insufficient support." *In re Marriage of McFarland*, 176 S.W.3d 650, 658 (Tex. App.—Texarkana 2005, no pet.). Thus, the mere fact that Wife received significant

"50 percent . . . of the balance accrued from October 10, 1987[,] through March 5, 2021." Assuming Husband's accounting is correct, we calculate the value of the retirement assets awarded to Wife to be approximately $67,744.

[12]As noted above, the parties had widely differing views regarding the Mexico property's value. The trial court valued the property at $66,500, which is the average of Wife's $13,000 estimate and Husband's $120,000 estimate.

property in the divorce is not sufficient to show that the trial court abused its discretion by awarding Wife spousal maintenance. Wife is not required to incur the penalties and tax consequences associated with withdrawing funds from her retirement accounts in order to meet her present needs. *See id.* at 659 (noting, in upholding trial court's award of maintenance, that primary asset awarded to wife was retirement account "which is subject to significant taxes for early withdrawal" and "[t]o generate any immediately accessible income from this fund would impose the significant early withdrawal tax consequences"); *Amos v. Amos*, 79 S.W.3d 747, 749–51 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (reciting trial court's finding that assets available to wife were not sufficient to meet her needs due to "the heavy penalties, interest and taxes associated with the withdrawal and use of funds" and holding that trial court did not abuse its discretion by awarding maintenance to wife). Moreover, though Husband posits that the Mexico property could be rented out to help provide for Wife's needs, it is not currently rented, and in fact, Wife testified that because of an agreement with her cousin to care for the property, it cannot be rented. Nor is Wife required to sell the property, which has been in her family for generations, to meet her present needs. *See, e.g.*, *Schafman*, 2022 WL 962466, at *6. Further, the "working motor vehicle" awarded to Wife is a 2008 Ford Fusion, which, according to Wife's testimony, needs repairs and may soon need to be replaced.[13]

---

[13]Wife testified that her car "hasn't had AC for a few months," "needs tires," is "making a noise," and is "not in good condition anymore." She also testified that she

13

Thus, Wife presented substantive and probative evidence to support the trial court's findings that Wife "lacks sufficient income to provide for her minimal needs" and "will lack sufficient property on dissolution of the marriage to provide for her minimum reasonable needs." *See Smith*, 115 S.W.3d at 305. Accordingly, we cannot conclude that the trial court abused its discretion by making these findings. *See* Tex. Fam. Code Ann. § 8.051.

We overrule Husband's first issue.

## B.     Division of the Marital Estate

In his second issue, Husband asserts that the trial court abused its discretion in dividing the marital estate because the property division is not "just and right." *See* Tex. Fam. Code Ann. § 7.001. However, Husband has not satisfied his burden on this issue.

### 1.     Legal Principles

Considering both parties' rights, a trial court is charged with dividing the community estate in a "just and right" manner. *Id.*; *Watson v. Watson*, 286 S.W.3d 519, 522 (Tex. App.—Fort Worth 2009, no pet.); *Todd v. Todd*, 173 S.W.3d 126, 128–29 (Tex. App.—Fort Worth 2005, pet. denied); *Loaiza v. Loaiza*, 130 S.W.3d 894, 899 (Tex. App.—Fort Worth 2004, no pet.). The law requires an equitable—not an equal—division of the community estate. *Halleman v. Halleman*, 379 S.W.3d 443, 452

---

had tried unsuccessfully to replace it during the pendency of the divorce proceedings.

(Tex. App.—Fort Worth 2012, no pet.). That said, some reasonable basis must support a disproportionate division. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.). In making its division, the trial court may consider many factors, including

- each spouse's earning capacity and financial condition;

- the spouses' respective abilities, education, and business opportunities;

- the size of their separate estates and any future needs for support;

- their physical health and age;

- the award of child custody;

- the length of the marriage and any fault in its breakup;

- attorney's fees;

- a spouse's dissipation of the estate; and

- any tax consequences.

*Smith*, 2022 WL 1682427, at *3 (first citing *Coleman v. Coleman*, No. 09-06-171CV, 2007 WL 1793756, at *2 (Tex. App.—Beaumont June 21, 2007, pet. denied) (mem. op.); and then citing *Hamilton v. Hamilton*, No. 02-19-00211-CV, 2020 WL 6498528, at *5 (Tex. App.—Fort Worth Nov. 5, 2020, no pet.) (mem. op.)). No single factor controls. *Felix-Forbes v. Forbes*, No. 02-15-00121-CV, 2016 WL 3021829, at *2 (Tex. App.—Fort Worth May 26, 2016, no pet.) (mem. op.).

## 2.      Standard of Review

"A trial court has broad discretion in dividing the marital estate, and we presume the trial court exercised its discretion properly." *Loaiza*, 130 S.W.3d at 899 (citing *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981)). To successfully challenge a trial court's division of property, a party must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion. *Id.*; *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (op. on reh'g); *Pletcher v. Goetz*, 9 S.W.3d 442, 446 (Tex. App.—Fort Worth 1999, pet. denied) (op. on reh'g). When determining whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether it acted arbitrarily or unreasonably. *Loaiza*, 130 S.W.3d at 899. The mere fact that we might have decided the issue differently does not establish that the trial court abused its discretion. *Gerges v. Gerges*, 601 S.W.3d 46, 54 (Tex. App.—El Paso 2020, no pet.); *Loaiza*, 130 S.W.3d at 900.

When determining whether the trial court abused its discretion, we view the evidence in the light most favorable to its ruling. *Cypress Creek EMS v. Dolcefino*, 548 S.W.3d 673, 687 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). We must indulge every reasonable presumption that the trial court exercised its discretion properly. *Faram v. Gervitz-Faram*, 895 S.W.2d 839, 844 (Tex. App.—Fort Worth 1995, no writ).

### 3. Analysis

Husband argues that the trial court's property division was not "just and right" because, by Husband's calculations, Wife received 60 percent of the community estate. Because most of the community estate was divided evenly,[14] Husband's primary complaint is that the trial court awarded 100 percent of the Mexico property to Wife without providing any offset to Husband for his community interest therein. However, Husband has not met his burden to show that the trial court's division was so unjust that it abused its discretion. *See Loaiza*, 130 S.W.3d at 899.

As noted above, among the factors that courts may consider in dividing a community estate are each spouse's earning capacity and financial condition; the spouses' respective abilities, education, and business opportunities; and the size of the spouses' separate estates and any future needs for support. *Smith*, 2022 WL 1682427, at *3. The trial court, likely with these factors in mind, made the following findings in support of its division of the marital estate:

---

[14]The divorce decree provided that the following property was divided equally between the spouses: Wife's retirement account, the community portion of Husband's retirement account, and the funds in all bank accounts in Husband's or Wife's name that were not held on behalf of a family member. Each spouse was awarded the house in which he or she lived as well as 100 percent of any bank accounts in his or her name held on behalf of a blood relative. Husband was awarded the following vehicles: 1986 Chevrolet Silverado, 2001 Ford F-150, 2017 Toyota Camry, and 2018 Chevy truck. Wife was awarded her 2008 Ford Fusion and a utility trailer. In addition, with certain minor exceptions, each spouse was awarded the other miscellaneous personal property—including clothing, jewelry, and furniture—within his or her possession or subject to his or her sole control.

[Wife] has a need for future support[.]

[Husband] has a separate estate. [Wife] does not have a separate estate.

There is a disparity of earning power between the two spouses. [Husband] was earning $20.00/hour at his job at Americold Logistics. [Wife] was earning $15.00/hour at her job at Ross Stores.

There is a difference between the spouses' business opportunities, education, capacities, abilities, and future employability. [Wife] ha[s] limited education and limited ability to work due to her disability. [Husband] is trained to be a forklift operator and has more opportunities available to him.

[Wife] was diagnosed with multiple sclerosis and fibromyalgia[,] impairing her ability to work[,] and she will have future medical expenses.

Each of these findings is supported by the record. As set forth above,[15] there is ample record evidence concerning Wife's medical diagnoses and need for financial support. Regarding Husband's separate estate, Husband's counsel represented to the trial court that approximately $50,000 of the value of his retirement account constituted Husband's separate property. Further, Wife testified that Husband had inherited a share of his parents' ranch, and the trial court's findings of fact recognize this property interest as part of Husband's separate estate. The parties' testimony and exhibits also support the trial court's findings regarding the spouses' relative earning capacities, training, and future employability.[16]

---

[15]*See supra* Section II.A.1.–2.

[16]Husband testified that he earned $20 per hour as a warehouse worker and had training to drive a forklift. Husband's income was verified by his paystubs, which

18

Moreover, beyond the factors addressed by the trial court's findings discussed above, the nature of the Mexico property supports the trial court's property division. *See Murff*, 615 S.W.2d at 699 (listing the nature of the property among the factors courts may consider in making a "just and right" division of a marital estate). Wife testified that the property had been in her family for generations and that she had purchased it from her grandfather prior to marriage. While the trial court may have determined that Wife's evidence was insufficient to rebut the presumption that the Mexico property was part of the community estate,[17] it was undoubtedly a close call.[18] Wife clearly had stronger ties to the Mexico property and presented evidence that she

---

were admitted into evidence. Wife's testimony and paystubs likewise support the trial court's finding that she earns $15 per hour as a retail worker. In addition, Wife testified that in the past year Husband had earned approximately $50,000 compared to Wife's $32,000 in earnings, and this disparity was further evidenced by the spouses' tax returns. Indeed, Husband acknowledged that he had always earned more than Wife.

[17]*See* Tex. Fam. Code Ann. § 3.003(a); *see also In re Marriage of Stegall*, 519 S.W.3d 668, 674 (Tex. App.—Amarillo 2017, no pet.) ("[W]e begin with a presumption that all property on hand at the time of dissolution of the marriage is community property.").

[18]In addition to her own testimony, Wife presented her aunt's corroborating testimony as well as survey and tax documents to show that she had purchased the Mexico property prior to marriage. *See supra* note 1. However, Wife also acknowledged that because her purchase agreement with her grandfather was oral, she did not have any paperwork to prove the date of the agreement and further acknowledged that her grandfather did not give her the deed until after she was married.

19

purchased it prior to marriage. These factors add additional support to the trial court's decision to award the full value of the property to Wife.

Given the trial court's findings and the evidence in the record, we hold that the trial court had a reasonable basis for its property division. *See Smith*, 143 S.W.3d at 214. Accordingly, we cannot conclude that the division was so unjust as to constitute an abuse of the trial court's broad discretion. *See Loaiza*, 130 S.W.3d at 899.

We overrule Husband's second issue.

### III. Conclusion

Having overruled both of Husband's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: December 29, 2022