# IN THE SUPREME COURT OF TEXAS

No. 17-0155

BART DALTON, PETITIONER,

v.

CAROL DALTON, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

JUSTICE LEHRMANN, concurring.

For years, Texas was the only state in the nation to reject court-ordered alimony as contrary to public policy. *See Cameron v. Cameron*, 641 S.W.2d 210, 218 n.7 (Tex. 1982). Unsurprisingly, the state was roundly criticized for declining to enact "even the most limited of spousal maintenance statutes" notwithstanding the "very real hardships" caused by the policy. *See, e.g.*, James W. Paulsen, *Remember the Alamo[ny]! The Unique Texas Ban on Permanent Alimony and the Development of Community Property Law*, 56 LAW & CONTEMP. PROBS. 7, 8 (Spring 1993). In 1995, the Texas Legislature finally reversed course by enacting what is now codified as Texas Family Code chapter 8, opening the door for court-ordered maintenance under limited circumstances. Act of May 26, 1995, 74th Leg., R.S., ch. 655, § 10.02, 1995 Tex. Gen. Laws 3543, 3577–80, recodified by Act of Apr. 7, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 34–37. In 2001, the Legislature strengthened chapter 8 by enacting provisions allowing for

enforcement of spousal maintenance orders by income withholding. Act of May 22, 2001, 77th Leg., R.S., ch. 807, § 1, 2001 Tex. Gen. Laws 1574, 1578–86 (codified as TEX. FAM. CODE §§ 8.101–.305).

In this case, we are presented with a Texas divorce decree giving full faith and credit to an Oklahoma order approving a spousal maintenance agreement between Bart and Carol Dalton. After Bart fell behind on his maintenance payments, Carol sought to enforce the order by income withholding and by an assignment of Bart's retirement benefits. The Court holds that Carol is entitled to neither of these enforcement mechanisms. While I agree with that result under the circumstances of this case, I write separately to clarify my views on a spouse's ability to enforce spousal maintenance obligations to the extent they qualify as such under chapter 8 of the Family Code.

### I. Income Withholding

I agree with the Court that Texas law authorizes income withholding only to enforce a court-ordered obligation that qualifies as spousal maintenance under chapter 8. I also agree that in this case, Carol has made no effort, at any stage of the proceedings, to allege or prove that any portion of the ordered spousal support so qualifies. Because of that failure, the Court does not address whether a party who has been awarded agreed spousal support under another state's law, but seeks enforcement in Texas, should be given the opportunity in the enforcement proceedings to show that some or all of the ordered maintenance is eligible for income withholding. I would affirmatively recognize that the enforcing party has that opportunity.

The Family Code expressly provides that the "court may order that income be withheld from the disposable earnings of the obligor in a proceeding in which there is an agreement for

2

periodic payments of spousal maintenance under the terms of this chapter voluntarily entered into between the parties and approved by the court." TEX. FAM. CODE § 8.101(a-1). However, the "court may not order that income be withheld . . . to the extent that any provision of an agreed order for maintenance exceeds the amount of periodic support the court could have ordered under this chapter or for any period of maintenance beyond the period of maintenance the court could have ordered under this chapter." *Id.* § 8.101(a-2). Implicit in this language is the directive that courts *may* order that income be withheld "to the extent" that the agreed spousal maintenance could have qualified under chapter 8.

This is consistent with *In re Green*, in which we analyzed similar statutory limitations on enforcing agreed spousal maintenance by contempt. 221 S.W.3d 645, 648 (Tex. 2007) (discussing TEX. FAM. CODE § 8.059(a)). In *Green*, we held that a maintenance obligation is punishable by contempt "only if it meets Chapter Eight's other requirements." *Id.* (emphasis removed). That is, "one spouse's voluntary agreement to support the other, *to the extent it exceeds a legal duty*, is a contractual debt that cannot be enforced by contempt." *Id.* (emphasis added). The logical corollary to this statement is that, to the extent a spouse's voluntary agreement to support the other *does not* exceed a legal duty, it may be enforced by both contempt and income withholding.

Accordingly, I would hold that, upon proof at an enforcement hearing that a party qualified for spousal maintenance under chapter 8 at the time of the divorce, a judgment for arrearages on a maintenance agreement is enforceable by income withholding or contempt "to the extent" that the agreement does not exceed what could have been ordered under that chapter. In turn, I respectfully disagree with any implication that such information must be either in the decree or in the record at the time of the divorce, as I believe the parties should be given the opportunity to litigate this issue

3

at the enforcement hearing. Otherwise, as a practical matter, a party attempting to enforce an out-of-state spousal maintenance order or agreement in Texas could never do so by income withholding or contempt because such orders or agreements are simply not entered with another state's law in mind.

## II. Retirement Benefits

The Court holds that the trial court erred in entering a qualified domestic relations order (QDRO) assigning Carol additional interests in Bart's retirement accounts to satisfy his alimony arrearages. Because Carol has never argued that any portion of Bart's support obligation qualifies as spousal maintenance under chapter 8, I agree with the Court that it is enforceable in Texas only as a contract and that Texas law does not authorize satisfaction of those arrearages via a QDRO. However, in so holding, the Court indicates that Texas law authorizes a QDRO *only* to effectuate the property division in a divorce decree. To the extent the Court holds that QDROs may not be used to enforce delinquent spousal maintenance and child support obligations imposed by the decree—a position contrary to that taken by family-law commentators in this State and the overwhelming majority of courts in other jurisdictions—I respectfully disagree.

As the Court explains, federal law generally prohibits assignment or alienation of retirement benefits and preempts state law to the contrary. 29 U.S.C. §§ 1056(d)(1), 1144(a). However, QDROs are exempt from this prohibition. *See id.* § 1056(d); *Boggs v. Boggs*, 520 U.S. 833, 846 (1997) (noting that QDROs "are exempt from both the pension plan anti-alienation provision and ERISA's general pre-emption clause" (citations omitted)). ERISA defines a QDRO as "a domestic relations order" that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable

4

with respect to a participant under a plan," and that meets various other technical statutory requirements. 29 U.S.C. § 1056(d)(3)(B)(i), (C), (D). In turn, a "domestic relations order" is "any judgment, decree, or order (including approval of a property settlement agreement)" that "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and "is made pursuant to a State domestic relations law (including a community property law)." *Id.* § 1056(d)(3)(B)(ii).

The Court concludes that Texas law does not explicitly authorize a QDRO for purposes other than enforcing a property division in the decree. The Court in turn implies that a Texas court's order assigning retirement benefits for any other purpose—including enforcement of child support or spousal maintenance under chapter 8—would not be made "pursuant to a State domestic relations law" and would not qualify even as a domestic relations order under ERISA, let alone a qualified domestic relations order. I respectfully disagree.

First, I disagree that the "State domestic relations law" to which ERISA refers is a law authorizing a QDRO. Rather, a "State domestic relations law (*including a community property law*)," *id.* (emphasis added), is necessarily the law giving rise to the underlying right the party is seeking to enforce through a QDRO, i.e., child support, alimony, or property division. That is, a Texas order qualifies as a domestic relations order under ERISA so long as the order relates to child support, alimony, or property division that is authorized by state law. *See Stinner v. Stinner*, 554 A.2d 45, 47–48 (Pa. 1989) (noting that the judgment for past-due alimony that the wife was attempting to enforce by garnishing the husband's pension was "made pursuant to the decisional domestic relations law of Pennsylvania").

5

That said (and ERISA aside), I agree with the Court that a judgment for child support or spousal maintenance, like any other judgment, cannot be enforced in Texas in a manner that violates Texas law.[1]  However, enforcing such a judgment via attachment of retirement benefits is fully in accordance with Texas law.  Although retirement benefits are generally exempt from attachment for the satisfaction of debts, TEX. PROP. CODE § 42.0021, Texas treats both child support and spousal maintenance obligations as materially different from traditional debts.  For example, the Texas Constitution broadly prohibits imprisonment for debts, TEX. CONST. art. I, § 18, but this prohibition does not apply to child support obligations or to court-ordered spousal maintenance obligations under chapter 8.  *In re Green*, 221 S.W.3d at 647.  Similarly, Texas law generally exempts wages from seizure or attachment.  TEX. CONST. art. XVI, § 28; TEX. PROP. CODE § 42.001(b)(1).  But income withholding is expressly available as a mechanism to enforce child support and spousal maintenance obligations.  TEX. CONST. art. XVI, § 28; *see also* TEX. FAM. CODE §§ 8.101–.102 (allowing income withholding for both current spousal maintenance obligations and maintenance arrearages); *id.* §§ 158.001, .003 (allowing income withholding for both current child support obligations and support arrearages).

As mentioned above, the Property Code largely exempts retirement benefits from attachment or seizure "for the satisfaction of debts."  TEX. PROP. CODE § 42.0021(a).  But this prohibition does not apply to a child support or spousal maintenance obligation for the same reason the prohibition against imprisonment for debts does not apply: such an obligation is not a "debt";

---

[1] While ERISA *allows* states to enforce child support, alimony, and property divisions authorized under the enforcing state's law via assignment of retirement benefits (as long as the domestic relations order is "qualified" by meeting technical requirements), it does not *require* states to do so.  That is, if Texas law affirmatively prohibited enforcement of child support and spousal maintenance orders by assigning retirement benefits, ERISA would have no effect on such a law.

it is a "legal duty arising out of the status of the parties." *Green*, 221 S.W.3d at 647 (quoting *Ex Parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993)). The Illinois Court of Appeals relied on this distinction in *In re Marriage of Thomas*, explaining that "when a former spouse seeks the assignment of the plan participant's retirement accounts after obtaining a judgment for a maintenance and child support arrearage, the spouse is not a typical creditor as that term is used in [the Illinois version of Texas Property Code section 42.0021]." 789 N.E.2d 821, 831 (Ill. App. Ct. 2003). Accordingly, the court of appeals held that the trial court could enter a QDRO assigning the participant's retirement and pension benefits to satisfy such a judgment. *Id.*

Courts in other jurisdictions have held similarly. For example, the Iowa Court of Appeals, finding "no established prohibition against an assignment [of retirement benefits to satisfy past-due alimony] under state law," concluded that the "question whether to permit the assignment rests with the particular facts of each case, and the equitable powers of the court in dissolution matters." *In re Marriage of Bruns*, 535 N.W.2d 157, 162–63 (Iowa Ct. App. 1995). The Indiana Court of Appeals cited *Bruns* approvingly in finding a QDRO "to be an appropriate mechanism for enforcement of [the] support arrearage judgment." *Hogle v. Hogle*, 732 N.E.2d 1278, 1284 (Ind. Ct. App. 2000).[2]

I agree with these well-reasoned decisions and believe Texas law similarly allows for enforcement of child support and chapter 8 spousal maintenance obligations via a QDRO that complies with ERISA's requirements.[3] Any conclusion to the contrary would require us to ignore

---

[2] Of course, as a general matter, "every court having jurisdiction to render a judgment has the inherent power to enforce its judgments. That power is part of the court's jurisdiction, and the court may employ suitable methods to enforce its jurisdiction." *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982) (citations omitted).

[3] The Court distinguishes these out-of-state cases as relying on "state law [that] allowed the garnishment of retirement benefits." *Ante* at ___. But with the exception of Idaho, none of the statutes the Court cites specifically

Texas's treatment of such obligations in comparison to traditional debts and would interfere with Texas policy favoring their enforcement. Again, Texas Property Code section 42.0021's exemption of retirement accounts from attachment, execution, and seizure specifically applies to the satisfaction of debts. Neither spousal maintenance nor child support is merely a debt under Texas law.

By contrast, the Court, finding no Texas statute affirmatively discussing the use of QDROs for a purpose unrelated to effectuating a property division, concludes that such orders are therefore not authorized by Texas law. The Court cites chapter 9, subchapter B of the Family Code, entitled "Post-Decree Qualified Domestic Relations Order," to support its position. Section 9.101 provides:

> (a) Notwithstanding any other provision of this chapter, the court that rendered a final decree of divorce or annulment or another final order dividing property under this title retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order or similar order permitting payment of pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States to an alternate payee or other lawful payee.

> (b) Unless prohibited by federal law, a suit seeking a qualified domestic relations order or similar order under this section applies to a previously divided pension, retirement plan, or other employee benefit divisible under the law of this state or of the United States, whether the plan or benefit is private, state, or federal.

TEX. FAM. CODE § 9.101. The statute goes on to obligate courts to "liberally construe this subchapter to effect payment of retirement benefits that were divided by a previous decree." *Id.* § 9.105.

---

authorize enforcement of alimony via attachment or garnishment of retirement benefits. Rather, they speak generally of paying such obligations from the property of the other spouse or utilizing the mechanisms available for enforcement of judgments. *See id.* at nn.19–20 (citing Idaho, Illinois, Indiana, Missouri, and Pennsylvania statutes regarding enforcement of spousal maintenance obligations).

The Court reads this language to limit a court's authority to enter a QDRO for a purpose other than effecting payment of previously divided benefits.[4]  But subchapter B contains no language limiting the authority a court may otherwise have (under both ERISA and state law) to enter an order permitting attachment of retirement benefits.  That is, nothing in subchapter B prohibits a court from enforcing child support and spousal maintenance via such an attachment.  Because I believe Texas law otherwise provides courts with that authority, I find the Court's reading of subchapter B overly restrictive.

It is true, as the Court notes, that Texas courts have no power to "amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment."  *Id.* § 9.007(a).  But garnishment of retirement benefits awarded to the payee spouse in order to enforce a child support or spousal maintenance obligation does nothing to the decree's division of property.  Indeed, almost every court to address the issue has held that using a QDRO for this purpose does not amount to an improper modification of the decree's adjudication of property rights.  *E.g., Hogle*, 732 N.E.2d at 1284; *Baird v. Baird*, 843 S.W.2d 388, 392 (Mo. Ct. App. 1992); *see also In re Marriage of Thomas*, 789 N.E.2d at 831 (holding that "ERISA permits a trial court's entry of a QDRO to assign pension and other retirement benefits to a former spouse to satisfy a judgment for past-due maintenance and child support payments").[5]  I agree with these decisions.  A court does not redivide marital property by enforcing a judgment for delinquent child support or spousal maintenance against the payee spouse's retirement benefits.  *See Hogle*, 732 N.E.2d at 1284; *cf.*

---

[4] The Court recognizes that section 154.003 broadly authorizes a court to order that child support be paid by "the setting aside of property to be administered for the support of the child as specified in the order."  TEX. FAM. CODE § 154.003(4).  It is not clear to me whether the Court reads this statute to authorize garnishment of retirement benefits to enforce child support arrearages, notwithstanding chapter 9.

[5] The Virginia Supreme Court decided otherwise in what has been called a "rogue" decision.  Brett R. Turner, 2 EQUITABLE DISTRIBUTION OF PROP. 3d § 6:19 (Nov. 2017) (citing *Hoy v. Hoy*, 510 S.E.2d 253 (Va. 1999)).

*Am. Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 124 (2d Cir. 1979) ("The purpose of [ERISA's] proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealings with third parties. The provision is not intended to alter traditional support obligations but rather to assure that the employee and his beneficiaries reap the ultimate benefits due upon retirement."). Such assignment, like income withholding and contempt, is merely a mechanism to ensure satisfaction of a legal duty that is already owed.

Finally, I note that Texas commentators have understood Texas law to authorize the use of QDROs to enforce child support and spousal maintenance orders. *See, e.g.*, Charla H. Bradshaw, *Retirement and Employment Benefits*, 2016 TEXASBARCLE ADVANCED FAM. L. ch. 19, at 37–38 (advising the use of QDROs in enforcing orders for child support and spousal maintenance); 33 JOHN F. ELDER, TEXAS PRACTICE: HANDBOOK OF TEXAS FAMILY LAW § 6.3 (2017) ("[A] qualified domestic relations order concerning retirement benefits can be used to enforce alimony and child support if plan payments are actually being made."). My conclusions on this issue are thus consistent with expert views on the subject.

### III. Conclusion

Again, I ultimately join the result the Court reaches in this case, but I disagree with several of the Court's statements, both express and implied, with regard to enforcing spousal maintenance in Texas. Because the respondent never argued or demonstrated that she qualified for spousal maintenance under Texas Family Code chapter 8, I concur in the Court's judgment.

_____
Debra H. Lehrmann
Justice

**OPINION DELIVERED:** June 29, 2018

10