

NUMBER 13-24-00307-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG

IN RE JOSE MANUEL FIGUEROA, JOANA MARCELIA FIGUEROA,
CLAUDIA ALINA ESPIN VILLALOBOS, D'YAVE FIGUEROA ESPIN,
ZARELEA FIGUEROA, AND MARCO CHACON FERNANDEZ

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2
OF HIDALGO COUNTY, TEXAS

MEMORANDUM OPINION

Before Chief Justice Contreras and Justices Tijerina and Silva
Memorandum Opinion by Chief Justice Contreras

Jose Manuel Figueroa, Joana Marcelia Figueroa, Claudia Alina Espin Villalobos,

D'Yave Figueroa Espin, Zarelea Figueroa, and Marco Chacon Fernandez (relators) seek

a writ of mandamus ordering the trial court[1] to vacate two judgments rendered in favor of

real party in interest Erica Edith Alonzo. Alonzo was married to singer and songwriter Jose

---

[1] This original proceeding arises from trial court cause number F-488-06-02 in the County Court at Law No. 2 of Hidalgo County, Texas, and the respondent is the Honorable Jaime Palacios. *See id.* R. 52.2.

Manuel Figueroa a/k/a Joan Sebastian (Figueroa); however, they divorced in 2006, and he passed away in 2015. Relators are Figueroa's heirs and beneficiaries. Relators contend that the two judgments—a July 17, 2020 order granting Alonzo's motion for summary judgment and judgment nihil dicit and a September 14, 2023 order granting Alonzo's motion for nunc pro tunc judgment and corrected judgment nihil dicit—are void. We agree, and we conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Alonzo and Figueroa were married from 1999 to 2006. Their marriage was dissolved by a "Final Decree of Divorce" signed on October 25, 2006.[2] This original divorce decree contained numerous provisions specifically addressing the division of their marital estate. For instance, the decree awarded Figueroa items that were "in [his] possession . . . or subject to his sole control," sums and benefits "existing by reason of [Figueroa's] past, present, or future employment," a specific piece of realty in Hidalgo County, and "[a]ll real properties acquired during marriage and not listed hereinbefore or hereinafter." The decree subsequently awarded Alonzo items that were "in [her] possession or subject to her sole control," sums and rights derived from her "past, present, or future employment," and several specific pieces of realty in Hidalgo County.

Almost five years later, on August 24, 2011, in the same cause number, Alonzo filed a "Post Judgment Petition for Division of Property, Request for Accounting, Request for Declaratory Judgment, Request for Temporary and Permanent Injunction, and

---

[2] The real party in interest appears in this original proceeding and in the pleadings below as Erica Edith Alonzo; however, we note that the original divorce decree orders that her "*name be changed to ERICA EDITH FIGUEROA.*"

2

Request for Hearing on the Temporary Injunction with Request for Disclosure." Alonzo alleged that, after the parties divorced, she "subsequently discovered that the divorce decree did not dispose of all property acquired during the marriage" and that "any and all property not properly addressed in the final divorce decree" was now held by the parties as tenants in common. Alonzo sought an accounting and declaratory and injunctive relief.

On November 27, 2011, Figueroa filed a "Plea to the Jurisdiction, Special Exceptions and Answer to [Petitioner's] Amended Post Judgment Petition for Division of Property, Request for Accounting, Request for Declaratory Judgment, Request for Temporary or Permanent Injunction, and Request for Hearing on the Temporary Injunction with Request for Disclosure." Figueroa denied that the court had jurisdiction to grant Alonzo's requested relief; specially excepted to Alonzo's petition on various grounds, including that Alonzo failed to specifically identify any items of property which were allegedly not disposed in the original divorce decree; generally denied Alonzo's claims; and argued that her claims were barred by limitations.

On July 31, 2014, Figueroa's counsel filed a motion to withdraw from representing him in the lawsuit. Counsel identified Figueroa's last known address as "c/o Provident Financial Management" at a post office box in Santa Monica, California.

On July 13, 2015, Figueroa passed away.

On July 14, 2015, Alonzo filed a "Suggestion of Death" for Figueroa requesting the trial court to issue scire facias[3] for Figueroa's "Administrator or Executor or Heir" and

---

[3] A suggestion of death for a defendant notifies the trial court that a defendant died. *In re Coats*, 580 S.W.3d 431, 435 (Tex. App.—Texarkana 2019, orig. proceeding); *Hegwer v. Edwards*, 527 S.W.3d 337, 339 (Tex. App.—Dallas 2017, no pet.); *see* TEX. R. CIV. P. 152. "The legal consequence of that notice is a jurisdictional defect: that a defendant is beyond the power of the trial court and the case cannot proceed

3

identifying "the last known address" as "Provident Financial Management" in Santa Monica, California. On August 3, 2015, the trial court granted Alonzo's request and ordered the clerk to issue a writ of scire facias, noting that the "last known address for [Figueroa]" was contained in the motion to withdraw filed by Figueroa's former counsel. On August 6, 2015, the clerk issued a writ of scire facias. It would appear to have been served on Provident Financial Management by certified mail; however, the return of service contained in the record is illegible.

On May 6, 2020, Alonzo filed a motion for summary judgment and judgment nihil dicit[4] premised on her 2011 post-decree petition for division of property. Alonzo explained

until jurisdiction is acquired over the legal representative of the deceased by service of scire facias." *In re Coats*, 580 S.W.3d at 435 (quoting *Hegwer*, 527 S.W.3d at 339); *see* TEX. R. CIV. P. 152. "*Scire facias* not only abrogates the common-law rule that death abates suit, but also provides for substitution of any person or persons succeeding to the rights of the original party, whether executor, administrator, heir, or person holding the same practical relation." *Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 390 n.2 (Tex. 1993); *see In re Coats*, 580 S.W.3d at 435. "[T]he revived action is merely a continuation of the original action, and the substituted party stands in the same shoes as the original party." *Id.*; *see In re Coats*, 580 S.W.3d at 435. "Thus, a judgment is void for lack of jurisdiction when it is entered against the legal representative of the deceased's estate without issuance and return of service of the writ of scire facias or appearance of the legal representative." *Hegwer*, 527 S.W.3d at 339 (collecting cases); *see In re Coats*, 580 S.W.3d at 436 ("And, when a defendant dies and no personal representative is served or participates in the trial, the resulting judgment is void as a matter of law."); *see also De La Morena v. Ingenieria E Maquinaria De Guadalupe, S.A.*, 56 S.W.3d 652, 655 (Tex. App.—Waco 2001, no pet.). If the decedent has filed an answer to the lawsuit, that answer inures to the benefit of the party substituted by scire facias. *Clark v. Turner*, 505 S.W.2d 941, 945 (Tex. App.—Amarillo 1974, no writ); *see Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 911 n.9 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also Yeoung Jin Kim v. Kim*, No. 02-19-00228-CV, 2020 WL 5047896, at *4 (Tex. App.—Fort Worth Aug. 27, 2020, no pet.) (mem. op.) (collecting cases).

4 Nihil dicit means "he says nothing." *Nihil dicit*, BLACK'S LAW DICTIONARY (12th ed. 2024); *Sharif v. Par Tech, Inc.*, 135 S.W.3d 869, 872 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A judgment nihil dicit is similar to a no-answer default judgment. *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 184 n.8 (Tex. 2012); *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979). The same rules apply "with respect to the effect and validity of the judgment." *Stoner*, 578 S.W.3d at 682; *see In re R.K.P.*, 417 S.W.3d 544, 549 (Tex. App.—El Paso 2013, no pet.). "In both instances, it is said that the non-answering party has 'admitted' the facts properly pled and the justice of the opponent's claim, although a judgment [n]ihil dicit carries an even stronger confession than the default judgment." *Stoner*, 578 S.W.2d at 682; *see In re R.K.P.*, 417 S.W.3d at 549. However, a nihil dicit judgment "is usually limited to situations where (1) the defendant has entered some plea, usually of a dilatory nature, but such plea has not placed the merits of the plaintiff's case in issue, or (2) the defendant has placed the merits of the case in issue by filing an answer, but such answer has been withdrawn." *Frymire Eng'g Co. v. Grantham*, 524 S.W.2d 680, 681 (Tex.

4

that Figueroa had filed an answer to her petition, but his counsel withdrew and Figueroa had passed away. Alonzo informed the court that she had filed a suggestion of death and the clerk had issued a writ of scire facias. She further stated that she had filed a "Notice of Pending Lawsuit and Claim"[5] in Figueroa's separately pending probate proceeding. Alonzo alleged that despite these efforts, no one had appeared on behalf of Figueroa's estate to respond to her claims; thus, a judgment nihil dicit was appropriate. Alonzo requested the trial court to award her a "rightful 50% share of the previously undisclosed community property." Alonzo provided an itemized list of the property at issue, which we summarize as follows in the interests of brevity:

- "Ownership interest in all real property acquired by [Figueroa] during the marriage" but not disposed in the original decree, including two pieces of realty in Irvine, California and Riverside, California;

- "Ownership interest in all personal property acquired by [Figueroa] during the marriage . . . including, but not limited to" two different airplanes;

- "Ownership interest in and share of all payments (including royalties, fees or other payments) . . . derived from any and all works/songs

---

1975) (per curiam) (footnotes omitted). If the defendant has filed an answer placing the merits of plaintiff's cause of action at issue, the defendant's failure to appear "is neither an abandonment of defendant's answer nor is it an implied confession of any issues thus joined by the defendant's answer." *Id.* If a timely answer has been filed, or the defendant has otherwise made an appearance, the defendant is entitled to notice of any setting as a matter of due process. *In re Brilliant*, 86 S.W.3d 680, 693 (Tex. App.—El Paso 2002, no pet.); *see Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84–86 (1988). Neither a no-answer default judgment nor a judgment nihil dicit may be taken in a divorce case. *See* TEX. FAM. CODE ANN. § 6.701; *Fuentes v. Zaragoza*, 555 S.W.3d 141, 162 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (collecting cases); *see also In re I.B.*, No. 05-18-01429-CV, 2019 WL 5884406, at *2 (Tex. App.—Dallas Nov. 12, 2019, no pet.) (mem. op.). Rather, in such cases, the petitioner or movant must adduce evidence to support the material allegations in its petition. *See Fuentes*, 555 S.W.3d at 163.

[5] The related probate matter is styled *In the Estate of Jose Manuel Figueroa*, and is pending in cause no. P-37,062 in the Probate Court of Hidalgo County, Texas. The "Notice of Pending Lawsuit and Claim" was filed on July 29, 2016, in the probate court and stated, in part, that Alonzo "has also previously provided the current Administrator in this proceeding with notice of the Lawsuit which is currently pending in Count[y] Court at Law No. 2."

5

written, produced and or performed by [Figueroa] during the marriage";

- "Ownership interest in and share of all payments made by Universal Musical Publishing Group that were derived from any and all works/songs written, produced and or performed by [Figueroa] during the . . . marriage";

- "Any and all Sound Exchange royalties or payments for any and all digital performances of songs written, produced and or performed by [Figueroa] during the marriage";

- "Any and all interest that [Figueroa] had in any corporate entity formed or acquired during the marriage . . . including, but not limited to Canteres Entertainment LLC (CA), Canteres LLC (DEL), Canteres Corp (NV), Red Planet Music Corp (DEL), Joan Sebastian, LLC (DEL) and/or Portico Music Inc.";

- "Ownership interest in any and all trademarks created or filed by or on behalf of [Figueroa] during the marriage"; and

- "Any and all copyright interest in all songs written or recorded by [Figueroa] during the marriage."

Alonzo supported her motion for summary judgment and judgment nihil dicit with various exhibits including her April 9, 2020 affidavit. In the affidavit, Alonzo averred that "[w]ell after" the 2006 divorce decree was signed, she "discovered that there was significant real, personal and intellectual property and assets that had been acquired during [the] marriage but that had not been disclosed and they were not included in the just and right division of [the] community property." She stated that "[b]ased on information and belief," the property that she identified "was not included in the just and right division of the community property under the final divorce decree and [she] should be entitled to [her] 50% share."

6

The trial court granted Alonzo's requested relief by order signed on July 17, 2020. The "Order Granting [Alonzo's] Motion for Summary Judgment and Judgment [Nihil Dicit]" is the first of the two orders at issue in this petition for writ of mandamus.

On March 5, 2021, in the probate proceeding, the probate court granted administration and appointed Alonzo as the dependent administrator of the decedent's estate.

On April 14, 2023, Alonzo filed a motion for judgment nunc pro tunc.[6] She argued that the summary judgment contained "a clerical mistake that if put in the improper hands may not be interpreted to accurately reflect the truth or justice of the case." Specifically, she alleged that there was a clerical error because the judgment did not grant her an award of 50% of the listed properties "that runs until infinity or at a time that she conveys or sells that 50% interest" or "until such a time that she is deceased."

---

[6] Even after a trial court's plenary power has expired, the trial court may correct clerical errors in an original judgment with a judgment nunc pro tunc. TEX. R. CIV. P. 329b(f); *Lubbock County v. Reyna*, 670 S.W.3d 769, 773 (Tex. App.—Amarillo 2023, pet. denied). "A clerical error is one which does not result from judicial reasoning or determination." *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 167 (Tex. 2013) (quoting *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam)); *see 21st Century Centennial Ins. v. Ramirez*, 675 S.W.3d 356, 364 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.). "Stated differently, a clerical error is a discrepancy between the judgment in the record and the judgment actually rendered." *In re A.M.R.*, 528 S.W.3d 119, 122 (Tex. App.—El Paso 2017, no pet.); *see Perez v. Perez*, 658 S.W.3d 864, 872 (Tex. App.—El Paso 2022, no pet.). "Even a significant alteration to the original judgment may be accomplished through a judgment nunc pro tunc so long as it merely corrects a clerical error." *Tex. Dep't of Transp.*, 397 S.W.3d at 167. Errors made in entering a judgment are clerical, and errors in the rendition of a judgment are judicial. *In re Elizondo*, 544 S.W.3d 824, 829 (Tex. 2018) (orig. proceeding) (per curiam); *Lubbock County*, 670 S.W.3d at 773. A judicial error is one that involves additional judicial reasoning. *Andrews*, 702 S.W.2d at 585. An attempted nunc pro tunc judgment entered after the expiration of the trial court's plenary jurisdiction is void if it corrects judicial rather than clerical errors. *Tex. Dep't of Transp.*, 397 S.W.3d at 167; *21st Century Centennial Ins.*, 675 S.W.3d at 364; *Cisneros v. Puentes*, 662 S.W.3d 601, 605 (Tex. App.—El Paso 2022, no pet.). Whether an error is clerical or judicial is a question of law that we review de novo. *Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex. 1986); *Lubbock County*, 670 S.W.3d at 773; *Cohen v. Midtown Mgmt. Dist.*, 490 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

On September 14, 2023, the trial court signed an "Order Granting Motion for Judgment Nunc Pro Tunc and this Corrected Judgment Nihil Dicit." This is the second of the two orders at issue in this original proceeding. This order tracks the terms of the previous summary judgment and additionally provides that Alonzo's 50% interest in the specified items "is an interest she holds as long in time as the law allows or until a time that she conveys or sells that 50% undivided interest"; that her interest "in all the intellectual property includes but is not limited to songs written and/or recorded by [the decedent] during the marriage"; and that her share of all payments, royalties, and fees derived from the decedent's "works," including songs written, produced, and or performed, encompassed those derived from anything created or produced both during the marriage and "AFTER the divorce."

On October 13, 2023, relators filed a motion requesting the trial court to reconsider its order granting Alonzo's motion for judgment nunc pro tunc. They stated that they learned of Alonzo's actions only "recently." Relators asserted that Alonzo was the administrator of the estate when the order issued and that "it was likely legally impossible for [Alonzo] to appear to represent the interests of [Figueroa] in the case she brought against him." Relators further argued that the trial court had changed the substantive division of the marital property as provided by the original divorce decree. And finally, relators also asserted that a nunc pro tunc judgment was not appropriate because the alleged errors were judicial rather than clerical in nature. On December 22, 2023, after further unrelated proceedings in the case, relators filed a supplement to their motion for reconsideration.

On December 28, 2023, the trial court denied relators' motion for reconsideration, but determined that relators possessed standing to pursue their claims. Relators thereafter filed a notice of appeal. *See In re Marriage of Alonzo & Figueroa*, No. 13-24-00011-CV, 2024 WL 377845, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2024, no pet.) (mem. op.). We dismissed that appeal for lack of jurisdiction. *Id.*

This original proceeding ensued. Relators raise four issues with sub-issues through which they assert that: (1) the trial court abused its discretion by issuing a void summary judgment and judgment nihil dicit in a post-divorce proceeding; (2) the trial court abused its discretion by issuing a void judgment nunc pro tunc and judgment nihil dicit; (3) relators lack an adequate remedy by appeal; and (4) relators have standing. We requested and received a response to the petition for writ of mandamus from Alonzo, and received a reply thereto from relators.

## II.   MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). Alternatively, when a trial court issues an order "beyond its jurisdiction," mandamus relief is appropriate because its order is void ab initio.

9

*In re Panchakarla*, 602 S.W.3d 536, 539 (Tex. 2020) (orig. proceeding) (per curiam) (quoting *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (per curiam)).

### III.  STANDING

Because standing is a threshold jurisdictional issue, *see Busbee v. County of Medina*, 681 S.W.3d 391, 395 (Tex. 2023) (per curiam), we first address relators' contention in their fourth issue that they have standing to assail the judgments at issue in this original proceeding. Relators assert that they have standing as the decedent's beneficiaries and heirs because: (a) Alonzo is the decedent's estate's dependent administrator; (b) heirs and beneficiaries have standing when the estate's personal representative will not bring suit or the representative's interests are antagonistic to the estate's interests; (c) non-parties to judgments have standing to collaterally attack them when the judgments directly and necessarily affect their interests; (d) Alonzo has pursued and received impermissible property divisions that divested the decedent's estate of property; and (e) relators have a personal stake in the controversy and are sufficiently related to it that they have a justiciable interest in its outcome because the trial court's orders divested property from the decedent's estate. In contrast, Alonzo asserts that relators, as non-parties to the divorce proceeding, lack standing to collaterally attack the divorce decrees.

Standing is a jurisdictional issue that "is essential to a court's power to decide a case. *McLane Champions, LLC v. Hous. Baseball Partners LLC*, 671 S.W.3d 907, 912 (Tex. 2023) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000)).

Standing involves a decision regarding whether a plaintiff has a sufficient justiciable interest in a lawsuit's outcome to be entitled to a judicial determination. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018); *see also Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) ("The standing doctrine identifies those suits appropriate for judicial resolution."). The lack of standing deprives the trial court of subject matter jurisdiction. *McLane Champions, LLC*, 671 S.W.3d at 912; *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 773 (Tex. 2020).

To possess standing, "a plaintiff must demonstrate that: (1) it suffered a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable decision is likely to redress the injury." *McLane Champions, LLC*, 671 S.W.3d at 912–13; *see In re Abbott*, 601 S.W.3d 802, 808 (Tex. 2020) (orig. proceeding) (per curiam); *see also Heckman v. Williamson County*, 369 S.W.3d 137, 154 (Tex. 2012) ("In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court."). Standing is a question of law that we review de novo. *In re Estate of Johnson*, 631 S.W.3d 56, 62 (Tex. 2021); *In re H.S.*, 550 S.W.3d at 155. In evaluating standing, we construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties. *In re H.S.*, 550 S.W.3d at 155; *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

"It is well-established that an individual who is not a party to a final judgment lacks standing to collaterally attack the judgment, unless the individual can establish their interests are directly and necessarily affected by the judgment itself." *Caballero v. Vig*, 600 S.W.3d 452, 459 (Tex. App.—El Paso 2020, pet. denied); *see In re Ocegueda*, 304 S.W.3d 576, 580 (Tex. App.—El Paso 2010, pet. denied); *Grynberg v. Christiansen*, 727

S.W.2d 665, 667 (Tex. App.—Dallas 1987, no writ). Thus, the individual must show that they have an interest in the subject matter to which the judgment relates. *Caballero*, 600 S.W.3d at 459; *Grynberg*, 727 S.W.2d at 667. A tangential or indirect interest will not suffice. *See Caballero*, 600 S.W.3d at 459–60 (concluding that a non-party lacked standing to attack an annulment between the judge and a lawyer); *In re Ocegueda*, 304 S.W.3d at 580–81 (concluding that attorneys who were non-parties to an expunction proceeding lacked standing); *Grynberg*, 727 S.W.2d at 667 (concluding that a non-party lacked standing to collaterally attack a final judgment that was rendered in another proceeding, where the only asserted interest in doing so was to avoid the inconvenience of attending depositions and producing documents); *see also In re A.V.T.R.*, No. 14-19-00986-CV, 2021 WL 924372, at *7 (Tex. App.—Houston [14th Dist.] Mar. 11, 2021, no pet.) (mem. op.); *Digilio v. True Blue Animal Rescue*, No. 01-18-01087-CV, 2021 WL 1031976, at *11 (Tex. App.—Houston [1st Dist.] Mar. 18, 2021, no pet.) (mem. op.). However, when the judgment deprives an owner of his property or a creditor of his lien without first joining the owner or creditor in the suit, such nonparty may collaterally attack the judgment in order to protect his interest in the property. *Grynberg*, 727 S.W.2d at 667 (collecting cases).

Alonzo asserts that in accordance with these general principles, relators as non-parties lack standing to collaterally attack the subsequent judgments in this case because they had no preexisting interest in the divorce proceeding itself. In support of her contention, she cites *Gilliam v. Riggs*, 385 S.W.2d 444 (Tex. App.—Beaumont 1964, writ dism'd w.o.j.); *Perry v. Copeland*, 323 S.W.2d 339 (Tex. App.—Texarkana 1959, writ

dism'd); and *Kieke v. Cox*, 300 S.W.2d 309 (Tex. App.—San Antonio 1957, no writ). Alonzo thus asserts that "Texas law is clear: non-parties to a divorce proceeding lack standing."

While we agree with Alonzo's general propositions of law, we conclude that they do not control our analysis in this case. In each of the cases she cites, the non-parties were attempting to set aside the validity of the parties' divorces or, stated otherwise, undo the divorces themselves. *See Gilliam*, 385 S.W.2d at 446–47 (holding that non-party lacked standing to set aside a divorce where he "in no manner alleges that he has any rights, claims or interest which would be prejudiced or injuriously affected by the enforcement of the judgment of divorce); *Perry*, 323 S.W.2d at 344 (failing to address standing but recognizing that daughter had no right to collaterally attack her father's divorce decree); *Kieke*, 300 S.W.2d at 311 (holding that a subsequent spouse and non-party to a divorce lacked standing to the divorce); *see also Hawk v. Wallace*, No. 02-21-00044-CV, 2022 WL 60736, at *5 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.) (concluding that a non-party lacked standing to assail the annulment of a marriage).

Here, relators are not attempting to attack or set aside Alonzo's divorce from Figueroa but, rather, the property divisions at issue in the subsequent judgments. The relators contend that they possess standing because they possess property interests in Figueroa's estate as his heirs and beneficiaries. *Caballero*, 600 S.W.3d at 459. They assert that Alonzo's actions in having the divorce decree modified after Figueroa's death to reduce his share of the marital estate have divested them of ownership of property rights that they possessed by virtue of Figueroa's death. In this regard, we note that

13

Figueroa's estate vested immediately in Figueroa's devisees and heirs at his death. *See* Tex. Est. Code Ann. § 101.001. The relators' requested relief of setting aside the subsequent judgments as void would redress their alleged injuries insofar as their property interests in the decedent's estate would not be diminished by the subsequent judgments. In other words, relators have established that they have suffered a concrete and particularized injury-in-fact, according to the allegations, their injury is fairly traceable to Alonzo's actions, and a favorable decision is likely to redress the injury. *See McLane Champions, LLC*, 671 S.W.3d at 912–13; *In re Abbott*, 601 S.W.3d at 808. We conclude that relators possess standing to assail the judgments at issue in this original proceeding, and thus we sustain their fourth issue.

### IV. THE SUBSEQUENT JUDGMENTS

In their first and second issues, relators contend that the July 17, 2020 summary judgment and judgment nihil dicit and the September 14, 2023 nunc pro tunc judgment are void. They assert that the trial court's plenary power to alter the divorce decree had expired and that both judgments substantively changed the division of property in the original divorce decree. Relators further argued that the changes in the 2023 judgment were judicial rather than clerical in nature, thus, a nunc pro tunc judgment was improper. In contrast, Alonzo asserts that the summary judgment order was the product of a post-decree petition for division of property and was authorized by law, and alternatively, the summary judgment was not void because it did not modify, alter, or change the division of property. Alonzo further contends that the 2023 judgment is not void because the

14

previous judgment on which it is based is not void, and the 2023 judgment only corrected a clerical mistake.

## A.    Construction of the Original Decree

We interpret the language of a divorce decree "as we do other judgments." *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009); *see Burnett v. Burnett*, 588 S.W.3d 675, 679 (Tex. App.—El Paso 2019, no pet.); *Higgins v. Higgins*, 514 S.W.3d 382, 388 (Tex. App.—San Antonio 2017, pet. denied). "We construe the decree as a whole to harmonize and give effect to the entire decree." *Hagen*, 282 S.W.3d at 901; *see Burnett*, 588 S.W.3d at 679; *Higgins*, 514 S.W.3d at 388. We interpret court orders and judgments according to the plain meaning of their terms. *Kim v. Ramos*, 632 S.W.3d 258, 269 (Tex. App.—Houston [1st Dist.] 2021, no pet.). When the decree is not ambiguous, we adhere to the literal language used in the decree; whereas, if the decree is ambiguous, we interpret it by reviewing the decree and the record. *Hagen*, 282 S.W.3d at 901; *Burnett*, 588 S.W.3d at 679; *Higgins*, 514 S.W.3d at 388. Whether a divorce decree is ambiguous is a question of law. *Hagen*, 282 S.W.3d at 901–02; *Burnett*, 588 S.W.3d at 679; *Higgins*, 514 S.W.3d at 388.

Here, neither relators nor Alonzo contend that the original divorce decree is ambiguous. We agree, and accordingly, we adhere to the literal language used in the decree. *See Hagen*, 282 S.W.3d at 901; *Burnett*, 588 S.W.3d at 679; *Higgins*, 514 S.W.3d at 388.

**B.      Validity of Post-Decree Orders**

The family code contains various provisions authorizing the trial court to enter certain post-decree orders regarding the clarification or enforcement of a decree. *See* TEX. FAM. CODE ANN. §§ 9.001–.302; *see also Cisneros v. Puentes*, 662 S.W.3d 601, 604–05 (Tex. App.—El Paso 2022, no pet.). Specifically, a trial court may "clarify" the decree and "may specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed." TEX. FAM. CODE ANN. § 9.006(a), (b); *see LeBlanc v. LeBlanc*, 676 S.W.3d 703, 706 (Tex. App.—El Paso 2023, no pet.). However, the code also prohibits the trial court from amending, modifying, altering or changing the substantive division of property in the decree. *See* TEX. FAM. CODE ANN. § 9.007(a); *Dalton v. Dalton*, 551 S.W.3d 126, 140 (Tex. 2018); *LeBlanc*, 676 S.W.3d at 707; *Cisneros*, 662 S.W.3d at 605. An order "that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable." TEX. FAM. CODE ANN. § 9.007(b); *see Dalton*, 551 S.W.3d at 140; *LeBlanc*, 676 S.W.3d at 707; *Cisneros*, 662 S.W.3d at 605. We review a trial court's ruling on a post-divorce motion for clarification or enforcement for an abuse of discretion. *Cisneros*, 662 S.W.3d at 604.

Alonzo asserts that the summary judgment order was the product of a post-judgment petition for the division of marital property that is authorized by Texas law. According to Alonzo, community property that is not partitioned or divided upon divorce is held by the former spouses as tenants in common or joint owners, and "a suit for

16

partition of such former community property is a proper means of dividing said property between the tenants in common." We agree that, under the common law, community property exists within a marriage and cannot survive divorce, and upon divorce, the former spouses are transformed into tenants in common or joint owners of the property. *S.C. v. M.B.*, 650 S.W.3d 428, 437 (Tex. 2022). Additionally, the family code provides for a statutory scheme enabling a former spouse to invoke the court's authority to divide as-yet-undivided property under a "just and right" standard. *See* TEX. FAM. CODE ANN. §§ 9.201–205; *S.C.*, 650 S.W.3d at 439–44. However, neither the common law nor the statutory scheme allows the re-litigation of issues that were resolved by the original divorce decree. *See S.C.*, 650 S.W.3d at 441. This is so even if the decree incorrectly characterizes or divides the property or contains a substantive legal error. *See id.* And it is so even if the properties at issue had been fraudulently or wrongfully concealed during the divorce proceeding. *See id.* at 440 (stating that "wrongful division can be challenged only by appeal" of the divorce decree).

## C.  Analysis of the Original Decree and Subsequent Judgments

After examining the original decree, the judgment nihil dicit, and the nunc pro tunc judgment, we conclude that the subsequent judgments impermissibly changed the substantive division of property in the original decree, which is expressly prohibited by the family code. *See* TEX. FAM. CODE ANN. § 9.007(a); *Dalton*, 551 S.W.3d at 140; *LeBlanc*, 676 S.W.3d at 707; *Cisneros*, 662 S.W.3d at 605. An order "that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable."

17

TEX. FAM. CODE ANN. § 9.007(b); *see Dalton*, 551 S.W.3d at 140; *LeBlanc*, 676 S.W.3d at 707; *Cisneros*, 662 S.W.3d at 605. The subsequent judgments change the substantive division of several categories of properties. We address only the more significant changes here.

First, the subsequent decrees changed the division of the parties' real property. The original decree awarded Figueroa one specific piece of realty in Hidalgo County and "[a]ll real properties acquired during marriage and not listed hereinbefore or hereinafter." The original decree awarded Alonzo six specific pieces of realty in Hidalgo County and a "Mobile Home along with Lot." The subsequent judgment nihil dicit and judgment nunc pro tunc award Alonzo "50% ownership interest in all real property acquired by [Figueroa] during the marriage" which "includes, but is not limited to his interest" in two properties in California. The subsequent judgments thus divested Figueroa of 50% of his interest in his Hidalgo County property and all properties not otherwise specifically identified in the original decree, including the two California properties. In this regard, we note that the original decree's "catch all" provision awarding realty that was not specifically identified in the decree to Figueroa can include the disposition of property that was unknown to the trial court when entering the decree. *See Bass v. Bass*, 106 S.W.3d 311, 317 (Tex. App.— Houston [1st Dist.] 2003, no pet.); *Stephens v. Marlowe*, 20 S.W.3d 250, 253–55 (Tex. App.—Texarkana 2000, no pet.). Alonzo does not specifically address these changes to the real property allocations in her response to the petition for writ of mandamus.

Second, the original decree awarded Figueroa all household furniture, furnishings; fixtures, goods, art objects, collectibles, appliances, equipment, clothing, jewelry, and

18

personal effects that were in his possession or subject to his sole control, as well as "[a]ny motor vehicle" in Figueroa's possession. The subsequent judgments awarded Alonzo "50% ownership interest in all personal property acquired by [Figueroa] during the marriage," including two aircrafts. "Personal property" is generally defined as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." *See Property*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also In re Marriage of Mann*, No. 13-21-00442-CV, 2023 WL 403004, at *7 (Tex. App.—Corpus Christi–Edinburg Jan. 26, 2023, no pet.) (mem. op.). While Alonzo argues primarily that aircrafts are not considered "household furniture" and they do not fall within any other category of property listed in the original decree, she fails to consider that the subsequent judgments nevertheless divested Figueroa of 50% of his interest in the categories of items that were expressly listed in the original decree. In other words, even if we take the aircrafts out of the equation, the subsequent judgments change the ownership allocation of the described property, including—for instance—Figueroa's art objects, collectibles, equipment, and jewelry.

Third, the original decree awarded Figueroa "[t]he sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to . . . benefits existing by reason of [Figueroa's] past, present, or future employment." The parties agree that Figueroa was a well-known singer and songwriter. Nevertheless, the subsequent judgments awarded Alonzo 50% of: "payments (including royalties, fees, or other payments) . . . derived from any and all works/songs written, produced and or performed

19

by [Figueroa] during the marriage"; "payments derived from works written, produced and or performed" in a specified catalog of Figueroa's music; "royalties or payments for any and all digital performances of songs written, produced and or performed by [Figueroa] during the marriage"; and "any and all copyright interest[s] in all songs written or recorded by [Figueroa] during the marriage." Whereas the original decree allocated to Figueroa 100% of the sums, proceeds, and rights related to benefits existing by reason of his employment, the subsequent decrees allocated Alonzo a 50% interest in the payments Figueroa received as a result of his works and songs written, produced, performed, or recorded.

Alonzo argues that Figueroa had no employer or master, so he was not an employee subject to employment, and thus the original decree does not encompass the payments, royalties, fees, or copyright interests that he received during or after the marriage. She further asserts, for instance, that royalties are obtained by nature of ownership rather than employment. While we appreciate Alonzo's contentions, we are required to interpret the original decree according to the plain meaning of its terms. *See Kim*, 632 S.W.3d at 269. The express language of the decree awarded Figueroa the sums, proceeds, and rights related to benefits existing because of his employment. The ordinary meaning of "employment" is not limited to a "relationship between master and servant" but also encompasses, for instance, "[t]he quality, state or condition of being employed," "the condition of having a paying job," and "[w]ork for which one has been hired and is being paid by an employer." *Employment*, BLACK'S LAW DICTIONARY (12th ed. 2024). In regular parlance, it is an "activity in which one engages or is employed" or "an

20

instance of such activity." *Employment*, MERRIAM-WEBSTER ONLINE DICTIONARY, at https://www.merriam-webster.com/dictionary/employment (last visited Aug. 4, 2024). In this regard, Alonzo acknowledges that "Figueroa was a well-known singer and songwriter."

Each of these provisions in the judgment nihil dicit and the judgment nunc pro tunc modify the substantive division of property made in the original decree. Thus, under the applicable and controlling law, we are constrained to conclude that the judgment nihil dicit and the judgment nunc pro tunc are beyond the power of the trial court and are unenforceable. *See* TEX. FAM. CODE ANN. § 9.007(b); *Dalton*, 551 S.W.3d at 140; *LeBlanc*, 676 S.W.3d at 707; *Cisneros*, 662 S.W.3d at 605. In short, the subsequent judgments are void. *See Dalton*, 551 S.W.3d at 140. We sustain relators' first and second issues. Having reached the conclusion that both judgments are void because they make substantive changes to the original decree, we need not address the parties' contentions regarding the propriety of notice or whether the nunc pro tunc corrected clerical or judicial error. *See* TEX. R. APP. P. 47.1.

## V.     REMEDY BY APPEAL

In their third issue, relators assert that they lack an adequate remedy by appeal to address the trial court's errors and alternatively, that they need not show that they lack an appellate remedy because the subsequent judgments are void. In contrast, Alonzo contends that relators only filed this petition for writ of mandamus after untimely filing a notice of appeal. She asserts that relators "contradict themselves and tell this Court no

21

appellate remedy exists," and that "said assertions are disingenuous and the Court should not entertain them."

As stated previously, if a trial court issues an order when it lacks jurisdiction to do so, mandamus relief is appropriate because such an order is void ab initio. *In re Panchakarla*, 602 S.W.3d at 539; *In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605. In such a circumstance, the relator need not show it lacks an adequate appellate remedy. *See In re Vaishangi, Inc.*, 442 S.W.3d 256, 261 (Tex. 2014) (orig. proceeding) (per curiam); *In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605. Thus, under the applicable law, because the subject orders are void, relators need not show that they lack an adequate remedy by appeal. *See In re Vaishangi, Inc.*, 442 S.W.3d at 261; *In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605. Further, "[i]t is settled law in Texas that . . . it is not necessary to appeal from a void judgment." *B.Z.B., Inc. v. Clark*, 273 S.W.3d 899, 903 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see State ex rel Latty v. Owens*, 907 S.W.2d 484, 486 (Tex.1995) (per curiam); *see also Matthews v. Nalco Co.*, No. 06-23-00038-CV, 2023 WL 6773862, at *7 (Tex. App.—Texarkana Oct. 13, 2023, no pet.) (mem. op.). Thus, under these specific facts and circumstances, we conclude that mandamus is appropriate. Accordingly, we sustain relators' third issue.

## VI.     WAIVER AND LACHES

Finally, we address Alonzo's arguments regarding the viability of mandamus relief in this case. Specifically, Alonzo asserts that the petition for writ of mandamus should be denied on the equitable principles of waiver and laches. However, if the subject orders are void, equitable doctrines such as delay and laches do not apply to bar mandamus

22

relief. *In re Giles*, 675 S.W.3d 376, 387 (Tex. App.—Corpus Christi–Edinburg 2023, orig. proceeding); *In re Timberlake*, 501 S.W.3d 105, 108 (Tex. App.—Houston [14th Dist.] 2015, orig. proceeding); *In re Valliance Bank*, 422 S.W.3d 722, 728 (Tex. App.—Fort Worth 2012, orig. proceeding [mand. denied]); *Zimmerman v. Ottis*, 941 S.W.2d 259, 262 (Tex. App.—Corpus Christi–Edinburg 1996, orig. proceeding). Accordingly, we must reject Alonzo's contentions that the petition for writ of mandamus should be denied based on these equitable doctrines.

## VII.   CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, Alonzo's response, relators' reply, the record, and the applicable law, concludes that relators have met their burden to obtain relief. Accordingly, we conditionally grant the petition for writ of mandamus, and we direct the trial court to vacate the July 17, 2020 and September 14, 2023 judgments. Our writ will issue only if the trial court fails to act in accordance with this opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
16th day of August, 2024.